SAGEBRUSH DEVELOPMENT, INC.,
Appellant (Plaintiff),

v.

Guenther MOEHRKE and Sally Moehrke,
Appellees (Defendants).

No. 5147.

Supreme Court of Wyoming.

Dec. 17, 1979.

Dan R. Price, II of Morgan & Brorby, Gillette, for appellant.

Richard S. Dumbrill of Jones, Dumbrill & Hansen, Newcastle, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Plaintiff-appellant appeals from a judgment rendered against it on a counterclaim of defendants-appellees for breach of contract wherein appellant agreed to provide water, sewer and street services for residents, such as appellees, of Rawhide Village II, a suburban subdivision in Campbell County and not within any city limits. Appellant claims error: (1) in that there was not "sufficient evidence to permit recovery," and (2) in the amount of damages awarded by the court.

We affirm.

Appellees are third-party beneficiaries under a 1975 contract between appellant and Stockmens Bank. The bank made mortgage loans to the owners of property in Rawhide Village II. The contract was entered into in anticipation of such and recites that it was made not only with the bank in its individual capacity "but also as the representative of and for the benefit of the present and future owners or occupants of all and each of the properties, buildings, residences, and other improvements which are now or may hereafter be served by the water supply system, sewer system and street system" of appellant.

In the contract, appellant covenanted and agreed among other things to:

"(a) * * * [S]upply at all times and under adequate pressure for the use of each of the properties duly connected to its water supply system a sufficient quantity of water to meet the reasonable needs of each of the properties duly connected to said water supply system. Such water shall be of the quantity and purity as shall meet the standards recommended by the 'Public Health Service Drinking Water Standards', promulgated by the United States Public Health Service, Department of Health, Education, and Welfare, and the water shall be treated in the manner necessary to assure its being of the quality and purity recommended in the above-mentioned Standards and also so as to produce water without excessive hardness, corrosive properties, or other objectionable characteristics making it unsafe or unsuitable for domestic and ground use or harmful to any or all pipes within and/or without the buildings, residences, and other improvements. * * *

"(b) * * * [P]rovide at all times for each of the buildings, residences, and other improvements constructed in the areas and subdivisions served by the sewerage system of the Company sewerage service adequate for safe and sanitary collection, treatment and disposal of all domestic sewage from said buildings, residences, and other improvements. The Company shall operate and maintain the sewerage system, including the sewage treatment plant, in a manner so as not to pollute the ground, air, or water in, under, or around said areas or subdivisions with improperly or inadequately treated sewage, or with noxious or offensive gases or odors. * *

"(c) * * * [T]o maintain the street system in good order and repair."

Appellees and other homeowners of Rawhide Village II complained to appellant and others concerning the services rendered by appellant under the contract. To force some action on their complaints, appellees and others began to pay for the utilities into a trust rather than to appellant. Appellant began this legal action against appellees to collect for utility services rendered during the period payments were made to the trust and not directly to it. Appellees counterclaimed for breach of contract. The trial court found for appellant on the complaint and awarded it $500.00 in damages.[1] The trial court found for appellees on the counterclaim and awarded them nominal damages of $10.00 for failure to provide water fit for the purposes intended; nominal damages of $10.00 for failure to provide street maintenance as agreed; $795.00 in damages resulting from sewer backup; and $4,000.00 in damages for diminished value of property because of failure to provide utility services as agreed.

## SUFFICIENCY OF EVIDENCE

As said in *Douglas Reservoirs Water Users Association v. Cross*, Wyo., 569 P.2d 1280, 1283 (1977):

"In matters of evidence on review, we apply the monotonously-repeated rule that an appellate court must assume evidence in favor of a successful party to be true, leave out of consideration the conflicting evidence of the unsuccessful party and give the evidence of the successful party every favorable inference which may be reasonably drawn from it. * * "

A review of the record under this standard reflects that there was ample evidence to support the facts of:

A. A breach of the contract by failing to "supply at all times * * * a sufficient quantity of water to meet the reasonable needs of each of the properties * * * and also so as to produce water without * * * other objectionable characteristics making it unsafe or unsuitable for domestic and ground use * * *," inasmuch as seven witnesses testified that there was presence of midge larvae or "worms" in the water; six witnesses testified that the water had a red "deposit" and color; two witnesses testified to a disagreeable odor from the water; the chief of the volunteer fire department testified that there was inadequate water to fight "any major structural fire, especially a house fire"; and three of the water samples submitted to the State Health Laboratory tested unsafe.

B. A breach of the contract by failing to "provide at all times for each of the * * residences * * * sewerage service adequate for safe and sanitary collection, treatment and disposal of all domestic sewerage," and to "operate and maintain the sewage system, including the sewage treatment plant in a manner so as not to pollute the ground, air, or water * * * with improperly or inadequately treated sewage, or with noxious or offensive gases or odors," inasmuch as one witness testified to the offensive odor from the sewage plant; one witness (the County Sanitarian) testified to raw sewage on the ground and exposed "sludge" in the plant area; six homeowner witnesses testified to sewage backup in their homes, with resulting odors and necessary cleanups; one witness (appel-

---

1. The amount of $500.00 had been paid into the trust by appellees. There was no cross-appeal.

lant's engineer) testified that the sewer backups could have resulted in faulty design of appellant's system and equipment; the DEQ inspection reflected that the "sewage has ponded around the plant" and that the plant "has been allowed to deteriorate to a sub-standard condition."

C. A breach of the contract by failing to maintain the street system in good order and repair, inasmuch as four witnesses testified to depressions and sinking of the streets over water and sewer lines and manholes, with resulting trenches and potholes making it difficult to drive on the streets.

A breach of contract is a failure without legal excuse to perform any promise which forms a whole or a part of a contract. *National City Bank of Cleveland v. Erskine & Sons*, 158 Ohio St. 450, 110 N.E.2d 598 (1953). It is a " * * * non-performance of any contractual duty of immediate performance. * * * " Restatement of Contracts § 312 (1932). The trial court made a determination that appellant did not perform contractual duties which should have been performed. This determination was adequately and sufficiently supported by the evidence. See *Lusk Lumber Co. v. Independent Producers Consolidated*, 35 Wyo. 381, 249 P. 790 (1926), reh. den. 36 Wyo. 34, 252 P. 1029 (1927).

## DAMAGES

Appellant contends that the award of $795.00 was improper since it was for expenses incurred in connection with a sewer backup for which it was not responsible. The trial court found otherwise as a matter of fact, not law. And when gauged by the aforesaid standard under which we must review the evidence, there is adequate support in the record for the finding of the trial court.[2]

The specific amounts paid for painting and other cleanup were of record. The record reflects that such activities were a direct result of the backup. The causal connection between the backup and the maintenance and operation of the system by appellant existed in the DEQ report that the plant itself had been allowed to deteriorate to a substantial degree, in the testimony of the County Sanitarian that the pipe size in the main line was inadequate and more susceptible to freezing than would have been a pipe of proper size, and in the testimony of the District Supervising Engineer of the DEQ that "part of the reasons for the backup was * * * attributable to the actual design of the lift station * * another reason why backups could be expected on this system was that there did not appear to me to be any overall daily operational maintenance or repair of the sewage or water system." From this, the trial court could properly infer that the broken cleanout should have been discovered by appellant and repaired before a freeze—particularly in view of the number and frequency of complaints in this area, which should alert appellant to take special care and attention in inspecting all lines having to do with sewage disposal.

Appellant's contention that appellees had not properly mitigated the damages by allowing the muck, etc. to be tracked into an area not flooded, again goes to a determination of fact within the discretion of the trial court. The trial court has considerable discretion as to matters to be considered in mitigation of damages. *Thayer v. Smith*, Wyo., 380 P.2d 852 (1963).

"The measure of damages for breach of contract is that which would place plaintiff in the same position as he would have been had the contract been performed, less proper deductions. In other words, it is that which will compensate him for the loss which full performance would have prevented or breach of it entailed. [Cita-

---

2. The services to be performed by appellant under the contract are more commonly performed by a municipality or governmental agency. The water service to be performed under the contract was not made subject to the supervision and control of the Public Service Commission as required by law. Appellant has now applied to the Public Service Commission for a Certificate of Public Convenience and Necessity. Since the Commission has authority to impose penalties for certain statutory and rule violations in this area, imposition of penalties in this respect will be left to the Commission.

tions.]" *Reynolds v. Tice,* Wyo., 595 P.2d 1318, 1323 (1979).

The emergency nature of the situation and the necessity for the plumber to have ready access for the purposes of correcting it supports the court's exercise of discretion in this respect. We do not find that it abused its discretion.

■ Appellant also contends that the $4,000.00 award for diminished value of the property was improper for four reasons:

1. It was unsupported by the evidence. This reason requires a review of the record to ascertain if there was supporting evidence looking only to that favorable to appellees and all reasonable inferences to be drawn therefrom. Four witnesses testified to decreased market value of the property in the subdivision because of the effect had on such value by the impaired services. Appellee Guenther Moehrke testified such to be "in the neighborhood of $5,000.00." Resident Berg testified that she didn't think her home was "worth anything right now." Resident McLeland testified the decrease in value to be "in the neighborhood of $4,000.00 to $5,000.00." Witness Hagerman gave his opinion as an expert of decrease in value at "about $7,000.00." The award of $4,000.00 was within the range of this evidence. There was testimony that the water and sewer problems in the subdivision were of general knowledge in the area. There was also testimony that such knowledge would have an adverse effect on the fair market value of the property. But, even without such testimony, a person of ordinary intelligence would know of the effect such problems would have on the market value of the affected property.

2. It was speculative. Although a factfinder may not make an award on the basis of speculation or conjecture, he need not make an award with precise mathematical exactness. It is sufficient if he determines the amount with a reasonable degree of certainty on the basis of the evidence placed before him, if the evidence is such as is reasonably applicable to the nature of the injury. A party who has breached a contract cannot escape liability because the amount of damages resulting therefrom cannot be depicted with absolute certainty. A just and reasonable degree of certainty based upon relative data is sufficient for the purpose. *Douglas Reservoirs Water Users Association v. Cross,* Wyo., 569 P.2d 1280 (1977); *Wyoming Wool Marketing Association v. Woodruff,* Wyo., 372 P.2d 174 (1962); *Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946); *Calkins v. F. W. Woolworth Co.,* 8th Cir. 1928, 27 F.2d 314. As previously indicated, the fact and nature of the damages were established. Testimony as to the amount of the damages from witnesses Berg and McLeland was received without objection. The opinion of appellee Guenther Moehrke as to value was proper inasmuch as the owner of the property is presumed to have special knowledge of it. *Town of Douglas v. Nielsen,* Wyo., 409 P.2d 240 (1965); *Adams v. Erickson,* 10th Cir. 1968, 394 F.2d 171. Witness Hagerman was qualified and testified as an expert on value. The award was based on such testimony and was with a reasonable degree of certainty.

■ 3. It was inconsistent with the finding of nominal damages. Under other circumstances this could be so since nominal damages are awarded when actual damages are not proven, are not susceptible to proof, or do not exist. *State ex rel. Willis v. Larson,* Wyo., 539 P.2d 352 (1975); *Harmony Ditch Co. v. Sweeney,* 31 Wyo. 1, 222 P. 577 (1924). They are proper when legal rights are invaded by one who has a duty not to invade them regardless of whether or not such invasion causes loss. McCormick on Damages § 20 (1935). See 22 Am.Jur.2d Damages § 9 (1965).

■ However, this contract was a divisible or severable contract in that it contemplated performance and payment for separate groups of activities, i. e., street maintenance, sewer service and water service, and it was in the nature of a continuing contract in that the services were to be continuously performed by appellant over an extensive period of time with payment therefor to be made by the residents of the

subdivision on a monthly basis. The contract has some aspects of an installment contract. That such was the intention of the parties is obvious from the terms of the contract, the third-party-beneficiary nature of it (consideration from the bank to appellant has already been executed), and the performance to date by the parties. 17 Am.Jur.2d Contracts §§ 324, et seq. (1964); 17A C.J.S. Contracts §§ 331, et seq. (1963); *Baffin Land Corporation v. Monticello Motor Inn, Inc.,* 70 Wash.2d 893, 425 P.2d 623 (1967).

It is, therefore, subject to partial breach. Restatement of Contracts § 316 (1932). Whether a breach is partial or total is one of degree. Restatement of Contracts §§ 316, 317 (1932); *City of Hampton, Virginia v. United States,* 4th Cir. 1955, 218 F.2d 401. The trial court and the parties treated the complaint, the counterclaim and the entire proceedings as ones involving partial breaches of the contract. Appellant's complaint was for past-due monthly payments, it did not suggest that there was a total breach of the contract. Its prayer was *only* for the past-due payments. It obviously contemplated future performance on its part under the contract by rendering the contractual services to appellees and to other residents of the subdivision. Similarly, the counterclaim was with reference to breaches of the contract by appellant which had already occurred, but it reflected contemplation of the continuation of the services by appellant and payments for them by appellees and other residents in the future.[3] The contract was subject to division since it was subject to a series of breaches, both time wise and subject wise. For example, appellant could breach the contract relative to only sewer services, only water services, only street services, or to any combination thereof. It could fail to furnish water for the months of February, July and September, and likewise to fail to furnish sewer services for two or three other months in the year. Appellees could pay for sewer service but not water service, or they could pay for the service for only four or five months during the year. Furthermore, the contract could be breached by failure of appellant to furnish services to four or five residents while adequately serving the rest. Or four or five residents could breach the contract by failure to make the monthly payments while other residents were paying promptly and in proper amounts.

It follows that the separate breaches of the contract are subject to separate actions. The plaintiff in such actions could allege a "total" breach, but the proof would have to establish less than substantial performance of the total contract by defendant. The failure of substantial performance in an action for partial breach of contract is with reference only to that divisible part of the contract upon which the action was instituted. *Howard v. Benefit Ass'n of Railway Employees,* 239 Ky. 465, 39 S.W.2d 657 (1931); *Beckwith v. Talbot,* 95 U.S. 289, 24 L.Ed. 496 (1877); *Coughlin v. Blair,* 41 Cal.2d 587, 262 P.2d 305 (1953).

Accordingly, damages for different amounts may be awarded for successive breaches of a divisible contract, and they may likewise be awarded for successive breaches of a continuing contract. See 17 Am.Jur.2d Contracts § 446 (1964). The award by the trial court in this instance of nominal damages for breaches of the two divisions of the contract and an award of compensatory damages for a third division of it were not inconsistent.

4. It was not based on a proper measure of damages. Appellant's contention in this respect is premised on the theory that the injuries were all temporary and once the sewage was cleaned up and the cause for overflow corrected, appellees were not entitled to damages, anticipatory and prospective in nature, and that the damages

---

**3.** Appellant was responsible for the timing of the action. It was the plaintiff. Appellees' counterclaim alleged the breaches of the contract by appellant. It is speculation as to whether or not appellees would have ever brought legal action, whether other residents of the subdivision would have joined in it, or whether they would have alleged "total" breach.

for diminution of value of the property fell into the prospective damage category.

Appellant is correct in that appellees are not entitled to prospective damages inasmuch as this action is based on partial breach of a divisible contract.

"Prospective damages—that is, damages which compensate for future losses reasonably certain to arise from a past breach of a contract promise—can be recovered when there is a total breach of a promise which has formed the consideration for an entire and indivisible contract. If such prospective damages are not recovered in an action based upon the breach, they cannot be compensated in a subsequent action—the first judgment being res judicata on the question of damages. When the breach is not total or when the breach affects only a portion of a divisible contract, prospective damages cannot be recovered. Thus, if the breach of an entire contract is only partial, the plaintiff can recover only such damages as he has sustained, leaving prospective damages to a later suit in the event of further breaches. Likewise, separate actions must be brought for breaches of separate promises in a divisible contract.

"In other words, the right to recover prospective damages for breach of a contract promise depends upon whether those damages arise from a new cause of action or are only further damages resulting from the original breach. In the former case, a new cause of action must be brought for each separate breach; in the latter case, all the damages—past and prospective—must be recovered in a single action." 22 Am.Jur.2d Damages § 29, pp. 49–50 (1965).

However, appellant is not correct in labeling as prospective the damages for diminution in value of appellees' property. The purpose of damages is to put the appellees in the same position as they would have been but for the breach. *Reynolds v. Tice,* Wyo., 595 P.2d 1318 (1979). Damages are measured as of the date of the breach. *Snowball v. Maney Bros. & Co.,* 39 Wyo. 84,

270 P. 167, reh. den. 39 Wyo. 84, 271 P. 875 (1928); *Lake Region Paradise Island, Inc. v. Graviss,* Fla.App., 335 So.2d 341 (1976). On the date of the breach, appellees' property *had* diminished in value because of the public awareness of improperly operated and maintained sewer and water service. It was a situation which appellees were morally obligated to make known to purchasers. It is true that the adverse situation may be alleviated by full performance of the contract on the part of appellant over a period of time, but appellees want to sell their house now. The diminution in value is a present fact, not a prospective fact. Having once received these damages, appellees cannot again recover them in the future. Should appellees retain ownership of the property, and should appellant further partially breach the contract, and should appellees bring another action for the further partial breach, an award in that action for diminished value of the property could be only for such as is in excess of the $4,000.00 already received.

Affirmed.