[Civ. No. 50633. First Dist., Div. Three. May 12, 1982.]

VINCENT J. ROVETTI et al., Plaintiffs and Respondents, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.

974

**COUNSEL**

George Agnost, City Attorney, and Kathleen A. Foley, Deputy City Attorney, for Defendant and Appellant.

Gary P. Vannelli and Molinari, Casalnuovo & Berger for Plaintiffs and Respondents.

**OPINION**

**SCOTT, J.**—This appeal is by defendant City and County of San Francisco from a judgment awarding $58,479.30 to repair respondents' home. The trial court determined repair costs as of the time of trial rather than at the time of injury seven years earlier. Appellant alleges this erroneously increased the award by some $18,000. Appellant also challenges the award as being speculative, excessive as a matter of law, and allowing recovery for damages respondent had a duty to minimize. Admission of an inspection report into evidence as a business record is also challenged.

## Statement of Facts

Respondents Vincent and Rosemond Rovetti have resided at 390 Lansdale Avenue in San Francisco since May of 1972. Soon after moving into their home respondents noticed a foul odor of sewage in their basement, which no amount of cleaning could remove. Water and other liquids were observed seeping under the home's foundations and into the basement. Appellant's Department of Public Works was summoned in June of 1972, and after performing a series of tests traced the seepage to a broken sewer line to the left of respondents' house. Seepages of liquids into respondents' basement stopped after the broken sewer was repaired.

In late fall 1972 and early 1973 respondents first noticed cracks forming in the exterior of their residence. Cracking went on until 1975. Respondents alleged that water entered through the cracks and damaged the home's interior. Respondents retained engineers and contractors to evaluate the needed repairs; the soils engineer found that the southeast corner of the house, nearest to the broken sewer line, had settled approximately two inches. A general contractor submitted a bid for the repair work, as of June 1978, in the sum of $63,773.05. He testified that the cost of repairs as of 1972 would have been $40,000.

The trial court, sitting without a jury, found for respondents, and after deducting a small amount from the contractor's repair bid, awarded $58,479.30 in damages. Appellant filed a timely notice of appeal.

### Timing the Assessment of Damages

■ The trial court found that "repair costs" were the appropriate measure of damages for this case and that those costs increased between 1972 and the time of trial "due to the normal forces of inflation." The court concluded that the increase in costs constituted "a detriment proximately caused by defendant's conduct, whether it could have been anticipated or not." Appellant contends that the court's evaluation of costs in 1978 was error, and that the trial court should have assessed the damages as of the time "a reasonably diligent person would have made the repairs."

It is well settled that damages for injury to real property should be in "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not" (Civ.

Code, § 3333) and that the amount should be measured in the most appropriate of several alternative ways. (*Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 576 [136 Cal.Rptr. 751]; *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 367 [28 Cal.Rptr. 357].) Appellant accepts the trial court's use of "repair costs" as a measure of damages but it claims respondents benefited by their lack of diligence in repairing their property. We fail to see what benefit could come to respondents when they are given merely what it costs to repair the damage caused by appellant. Increasing an award to compensate for the effects of inflation insures that a plaintiff will not receive less than he is entitled to; such an increase merely removes the impact of inflation from the amount of the judgment awarded. Where an inflation adjustment is made the impact of delay is minimized, not exacerbated; and the defendant is denied the windfall of paying for an injury with dollars of diminished value. The plaintiff recovers only that which time has already taken from him.[1]

We emphasize the difference between the instant case and that where a plaintiff delays in order to take advantage of a "rising market." In the latter situation the value of the item in question is rising, in constant-dollar terms, and the plaintiff delays in order to avail himself of the increasing value. In an inflationary environment the opposite occurs; the value of the item remains constant while the value of the dollar declines. In the latter case the defendant would gain, and the plaintiff lose, were no adjustment made. An adjustment merely restores the status quo ante. The trial court found that the increased award was necessitated by inflation and there is no evidence that the delay was in fact inspired to take advantage of a rising market. The trial court's adjustment was proper.

### Proximate Cause of Damages

Appellant alleges the trial court allowed recovery for four items of damage not proximately caused by the broken sewer line: peeling and blistering exterior paint; rotted deck and stair lumber; replacement of a walkway; and damage due to a faulty roof.

---

[1]Respondents suggest in their brief that appellant acquiesced in the delay in bringing this case to trial; while the stipulation referred to by respondents is not part of the record on this appeal, appellant in its reply brief chose not to dispute respondents' contention of acquiescence. It should be emphasized that acquiescence is *not* the basis for allowing an inflation adjustment since the adjustment is not prejudicial to either side but serves only to remove an entirely unwarranted windfall to appellant.

### 1. *Exterior Paint*

 Respondents' contractor, Portman, included in his bid for repair work the sum of $12,272 to repair peeling and blistering exterior paint. He testified that the house's subsidence and its later jacking and leveling would cause the paint to crack. The weather's adverse effect on the house's exterior paint would be exacerbated by the presence of cracks since water could enter through them and cause the paint to peel. Portman testified that the usual practice in repainting after repairs are done is to repaint an entire room rather than a single wall to avoid the look of unevenness. The trial court could reasonably conclude that a similar repainting of the entire *exterior* was necessary, where cracks develop in exterior walls. The trial court found in accordance with Portman's testimony, that the exterior walls were damaged by both the settlement of the house and by the entry of moisture through cracks. On appeal even slight evidence of respondents is sufficient to sustain the judgment of the trial court. (*Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 849 [176 Cal. Rptr. 239]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 250, p. 4241.) The award for paint will not be disturbed.

### 2. *Lumber*

 Respondents' contractor, Portman, testified that approximately $600 of the repair estimate was allocated to replacing deck and stairway lumber at the rear of respondents' house. It is undisputed that Portman's estimate of repairs calls for repair of damage caused by settlement of the earth on which the deck rests. Although the timbers to be replaced had deteriorated with the passage of time, this repair item was minimal and it was reasonable for the court to attribute the entire replacement cost to the subsidence.

### 3. *Replacement of Walkway*

 Respondents' repair estimate included repair to a damaged concrete walkway at the east side of respondents' home. Appellant claims the damage to the walkway was not caused by the broken sewer line, and that the trial court's award is therefore excessive.

Respondents' contractor, Portman, testified that earth had slid away from underneath the walkway, causing an eight- to ten-foot section to drop away. This damage was in the area of the home that received the

most severe subsidence damage. The inference is drawn that appellant's negligence also caused the walkway subsidence.

### 4. *Roof Leakage*

■ Appellant objects to the assessment of damages due to a leaky roof. The trial court deducted from the Portman repair estimate an amount allocated to repair of the roof of respondents' home since this repair was not necessitated by any act of appellant. However, the trial court allowed recovery for interior damage due to water entering the house through a crack in the roof. Although no expert precisely identified the cause of this crack, Mrs. Rovetti testified that the crack was growing larger with time.

■ It is well settled that "'. . . an appellate court must accept as true all evidence tending to establish the correctness of the findings as made, taking into account, as well, *all inferences which might reasonably have been thought by the trial court to lead to the same conclusion.*'" (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602] (italics added); 6 Witkin, Cal. Procedure (2d ed. 1971) § 245, p. 4237.) ■ The trial court could have inferred that the roof crack was one of those which was caused by subsidence of the earth and settlement of the house, and that the water damage to the interior was the proximate result of this crack. The trial court's inclusion of interior damage as an item to be repaired was proper and will not be disturbed on appeal.

### *Contingency Expenses*

■ Appellant next objects to the inclusion of "contingency" items in the award to cover repair expenses which cannot be precisely measured until the repair work is actually done.[2] Appellant contends that such amounts are by their nature speculative and uncertain, and thus unrecoverable. Although these expenses will not be precisely known until the work is in fact done, reasonable "contingency" expense items cannot be characterized as speculative. Damages in all tort actions are not precise. Uncertainty as to the amount of damage is not fatal to the recovery. We find no error in this assessment of damages. (See *Monroe* v. *Owens* (1946) 76 Cal.App.2d 23 [172 P.2d 110]; see also Attorneys Guide to Cal. Construction Contracts and Disputes (Cont.Ed.Bar 1976) Allowances, § 2.20.)

---

[2]The contingency items are the removal of plate glass windows while respondents' home is jacked up ($3,000); and allowance for excess pressure-grouting material ($3,300); and labor expense ($1,690).

*Admission of Exhibit 39*

■ Appellant's final challenge is to the admission in evidence of an "inspection report" letter concerning the broken sewer line. The letter, by James Hawke of Hawke Engineers to counsel for respondents, recounted Hawke's inspection visit to the Rovetti home at respondents' request. The letter details Hawke's discussion of the sewer with an employee of appellant, and notes Hawke's own observations of the sewer line. Hawke had died prior to trial; the trial court admitted the letter under the "business records" exception to the hearsay rule following foundation testimony that it is the practice of engineers to make such written inspection reports.

Appellant's objection to the Hawke letter goes to its lack of the "trustworthiness" required by Evidence Code section 1271.[3] As noted above, the inspection which the letter recounts was conducted at counsel's request rather than as part of an ongoing business operation. While this fact may cast some doubt on the report's trustworthiness, the trend in the appellate cases has been to allow broad trial court discretion as to the business records exception to the hearsay rule. (See *Levy-Zentner Co.* v. *Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 785 [142 Cal.Rptr. 1]; *People* v. *Williams* (1973) 36 Cal.App.3d 262, 274-275 [111 Cal.Rptr. 378].) As appellant has suggested, the Hawke letter has been contradicted by other evidence; the trial court was in all likelihood aware of the report's inaccuracies and may have discounted its value. In any event, since the trial court awarded only compensatory damages, we fail to see how appellant could have been prejudiced by the letter's "implication" that appellant was less than diligent in effecting repairs to the sewer line.

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.

---

[3]Evidence Code section 1271 provides in pertinent part: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if ... (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."