Jimmy L. ANDERSON, Carol A. Anderson, and Heritage Village Development, Inc., a Wyoming Corporation, Appellants (Defendants and Third-Party Plaintiffs),

v.

Raymond BAUER and Diana Bauer, husband and wife; Russell I. Bell and Marilee Bell, husband and wife; Robert E. Jauch and Kathy L. Jauch, husband and wife; Raymond M. Ricci and Bernadette Ricci, husband and wife; Phillip W. Patrick and Diana Patrick, husband and wife; Donnie R. Haney and Sandra Haney, husband and wife; Nona Gail Anderson and Beula Hawley; Leo R. Hendricks and Betty L. Hendricks, husband and wife, Appellees (Plaintiffs),

and

PLAINS ENGINEERING, INC., Appellee (Third-Party Defendant).

Steve Beilgard and Heritage Homes, Inc., Appellants (Third-Party Plaintiffs),

v.

Donnie R. HANEY and Sandra Haney, husband and wife; Nona Gail Anderson and Beula Hawley; Leo R. Hendricks and Betty L. Hendricks, husband and wife; Raymond M. Ricci and Bernadette Ricci, husband and wife; and Phillip W. Patrick and Diana Patrick, husband and wife, Appellees (Plaintiffs),

and

PLAINS ENGINEERING, INC., Appellee (Third-Party Defendant).

Beula Hawley and Nona Gail Anderson, Donnie R. Haney and Sandra Haney, husband and wife, Leo R. Hendricks and Betty L. Hendricks, husband and wife; Russell I. Bell and Marilee Bell, husband and wife, Robert E. Jauch and Kathy Jauch, husband and wife, Phillip W. Patrick and Diana Patrick, husband and wife, Raymond Bauer and Diana Bauer, husband and wife, Raymond M. Ricci and Bernadette Ricci, husband

and wife, Appellants (Plaintiffs),

v.

Jimmy L. ANDERSON, Carol A. Anderson, Heritage Village Development Company, Inc., The Campbell County Board of Commissioners, Campbell County, Wyoming, Appellees (Defendants).

Nos. 83–129, 83–130 and 83–137.

Supreme Court of Wyoming.

April 19, 1984.

1318

Franklin J. Wallahan (argued), Rapid City, S.D., and Leslie W. Hawkey, Jr., Gillette, for Developer Andersons and Heritage Village Development Company, Inc.

Dwight F. Hurich, Gillette, for builder Beilgard and Heritage Homes, Inc. submitting on brief.

Rex O. Arney, Sheridan, for Campbell County Board of Commissioners.

H.W. Rasmussen and Fred R. Dollison (argued), Badley & Rasmussen, P.C., Sheridan, for homeowners.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN, and CARDINE, JJ.

CARDINE, Justice.

Eight homeowners brought separate actions in negligence and breach of warranty against the land developer, builders, and Campbell County to recover damages to their houses from seepage of water. These appeals are from a judgment in favor of the county and against the developer and builders.

We will affirm in part and reverse in part.

The issues for our determination, as stated by the parties are as follows:

1. Were plaintiff homeowners' claims barred by a statute of limitations?
2. Were the builders and developer liable for damages to the plaintiffs' homes on the theories of negligence and breach of implied warranty?
3. Was the proper measure of damages applied in determining the plaintiffs' loss under the circumstances?

Eight plaintiff homeowners brought eight separate lawsuits to recover damage from water seeping into their basements. The defendants were: the developer of the subdivision in which the homes were built, Jimmy L. Anderson, Carol A. Anderson, and Heritage Village Development Company, Inc.; the builders of the homes: D.W. Birks, Kenneth Hoffner, Steve Beilgard and Heritage Homes, Inc.; and Campbell County, Wyoming. The eight separate actions were consolidated for trial. During trial, builder D.W. Birks settled with plaintiff Bauer, and Kenneth Hoffner settled with plaintiffs Bell and Jauch. At the conclusion of plaintiffs' cases, an order of dismissal as to Campbell County was entered in all cases. After trial, the court entered judgments in favor of the plaintiffs and against both the developer and builders. The developer has appealed. The builders, Beilgard and Heritage Homes, Inc. have appealed. The plaintiffs have appealed and are both appellants and appellees. For the sake of clarity, we will refer to appellants Andersons and Heritage Village Development Company, Inc. as developer, appellants Beilgard and Heritage Homes, Inc. as builder, appellees-appellants-plaintiffs as homeowners, except where reference to a specific homeowner is necessary, and appellee Campbell County as County.

At the outset, when considering the facts and evidence upon appeal, we reiterate that

"[w]e assume that evidence in favor of the successful party is true, disregarding entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. 'So long as there exists substantial evidence supporting the trier of fact's determination, we will not second guess it on appeal.' * * * " *Richardson v. Green,* Wyo., 644 P.2d 778, 779 (1982).

In 1974, Anderson purchased eighty acres of land near Gillette, Wyoming for the purpose of subdivision and development. A corporation, Heritage Village Development Company, Inc., was formed with the Andersons being the sole stockholders, officers and employees for the corporation. Andersons employed an engineering firm to study, lay out and subdivide the land, prepare and file required plats, comply with applicable rules and regulations for

subdivisions and obtain final approval of the County for the subdivision. The plat and subdivision was approved July 1975; there was later an amendment to the plat and it was reapproved August 1976. Andersons began selling lots. The engineering firm then advised that a soils test was needed to secure FHA approval, and a soils test and report were done by Northern Testing Laboratories. The soils test report described a potential water table problem.

In 1977 and early 1978, each of the builders began purchasing lots for building homes, taking title by warranty deed. The eight houses, all with basements, involved in this litigation were constructed by the builders upon these lots and then sold and conveyed by warranty deed to the respective plaintiffs. Generally, within a few months after purchase, each of the plaintiffs experienced water seepage into their basements causing damage to property. They complained to the building contractor. A sump pump was installed, but that proved inadequate as a solution to the water problems. The seepage worsened, and this litigation ensued.

Upon completion of the consolidated trials, the court entered judgment in favor of each homeowner against the developer and builder finding each equally at fault. The homeowners were held to be without fault. Campbell County had previously been dismissed from the litigation at the close of plaintiffs' case.

I

## BAR OF THE STATUTE OF LIMITATIONS

■ The time within which the homeowners can bring suit to recover this kind of damage for negligence is four years after their cause of action accrues.[1] The following table summarizes the critical dates relating to timeliness of commencing suit against the developer, builder, and Campbell County:

| Builder | Homeowner | First Water Noted | Suit Filed Against Dev. & Bldr. | First Claim Against County |
|---|---|---|---|---|
| 1. Heritage Homes, Inc. | Ricci | 4 or 5/78 | 1/12/82 | 10/18/82 |
| 2. Hoffner | Bell | 4/78 | 1/12/82 | 10/18/82 |
| 3. Hoffner | Jauch | 4/78 | 1/12/82 | 10/18/82 |
| 4. Heritage Homes, Inc. | Green who conveyed to Patrick | 4/78 | 1/12/82 | 10/18/82 |
| 5. D. W. Birks | Bauer | 7 or 8/78 | 1/12/82 | 10/18/82 |
| 6. Heritage Homes, Inc. | Haney | 5/78 | 4/26/82 | 10/18/82 |
| 7. Heritage Homes, Inc. | Anderson/ Hawley | 7/78 | 5/17/82 | 10/18/82 |
| 8. Heritage Homes, Inc. | Hendricks | 5/78 & 6/78 | 5/21/82 | 10/18/82 |

1. Section 1–3–105(a)(iv)(B) and (C), W.S.1977, provides:

"(a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:

\* \* \* \* \* \*

"(iv) Within four (4) years, an action for:

\* \* \* \* \* \*

"(B) The recovery of personal property or for taking, detaining or injuring personal property;

"(C) An injury to the rights of the plaintiff, not arising on contract and not herein enumerated \* \* \*."

The trial court in ruling on motions late in the day at the end of the fourth day of trial, stated:

"THE COURT: The Court will deny all the motions with the exceptions of the one based on the Statute of Limitation as to the three plaintiffs. Grant that on the basis of the Statute of Limitations."

and, after additional argument:

"MR. SCOTT: It's my—getting awfully late.

"THE COURT: Well, gentlemen, I'm going to reverse myself, I'm going to deny all motions."

When court resumed the next morning, the court stated:

"The Court first wishes to make an announcement and clarification of its ruling last evening in regards to the dismissal of the county * * *. The Court feels that the county * * * was acting in either a quasi legislative or judicial manner and [in] giving its approval to the subdivision and * * * [t]he [court] has not reversed itself on the statute of limitations and that was the sole grounds for the removal of the county."

■ The statute of limitations begins to run when the injured party knows or reasonably ought to know that some damage has resulted from the wrongful act. That is true although the damage is slight, continues to occur, or additional damage caused by the same wrongful act may result in the future. *Duke v. Housen*, Wyo., 589 P.2d 334 (1979); *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981). In the instant case, the water seepage first noted generally caused damage either immediately or within a few days to the basement foundations, walls, sheetrock, carpets, furniture, items stored, or personal property. Each homeowner's cause of action accrued on or about the date water seepage was first noticed and damage occurred, and unless suit was filed within the ensuing four years, it was barred.

The summary of critical dates indicates that the first water seepage and resulting damage to the various homeowners occurred from April 1978 through July 1978. All of the homeowners first asserted claims against Campbell County October 18, 1982, which was more than four years after their action had accrued. Their respective actions, therefore, were barred by the running of the period of limitation; and the court correctly entered its order of dismissal as to Campbell County.

The trial court stated that its basis for granting the County's motion to dismiss was that the statute of limitations had run, governmental immunity was a bar to these suits, the actions of the County in approving the plat and subdivision were quasi-judicial in nature and therefore did not give rise to liability upon the County, and it was not the intent of the legislative enactments pertaining to subdivisions to create liability upon the County in acting pursuant to those statutes. Having concluded that the homeowners' cases against the County were barred because not filed within the limitation period for such cases, we need not consider the propriety of the other bases for the entry of the order dismissing the cases against the County, for, as noted in *ABC Builders, Inc. v. Phillips*, supra at 935,

"* * * If the determination of a trial court is correct on any theory, it will not be disturbed. * * *"

■ With respect to the builders and developer, the table summarizing critical dates (which is the evidence most favorable to the prevailing parties) demonstrates that each of the homeowners commenced her or his respective action within the four-year statutory period and were not, for that reason, subject to dismissal. We are aware of the contention that the limitation period had expired as to the homeowners Jauch, Ricci, Bell, Hendricks, and Haney. With respect to Jauch and Bell, their earlier complaints concerned sewer problems, not water seepage. Ricci conceded on cross-examination that he might have first noticed water seepage in March 1978, but even accepting that date, he had filed within the four-year limitation period. Mr. Beilgard testified very briefly that Hendricks called his office on March 13, 1978 and Haney called March 27, 1978, complaining of water problems. Hendricks and Haney both

testified that seepage of water into their basements causing damage occurred during May of 1978. Accepting that as evidence most favorable to the prevailing party, as we must do, we cannot conclude that the statute of limitations had run as to any of the homeowners against the builder or developer at the time their respective cases were filed. Their cases, therefore, were not barred by the statute of limitations or subject to dismissal for this reason.

II

## LIABILITY OF THE BUILDER AND DEVELOPER

The doctrine of caveat emptor (let the buyer beware) was long applied in the sale of real estate, effectively insulating a vendor from liability to a purchaser. As we developed from a rural to an urban society, large subdivisions were developed for housing. Builders constructing great numbers of houses acquired considerable knowledge and exertise in the area and used engineering services and studies to determine soil conditions and identify drainage and water problems, foundation requirements, and other questions concerning suitability for construction. Recognizing that a builder is in the business of constructing houses and is in a position of superior knowledge, we held that,

" * * * [w]here a vendor builds new houses for the purpose of sale, the sale carries with it an implied warranty that it is constructed in a reasonably workmanlike manner and is fit for habitation. * * *" *Tavares v. Horstman*, Wyo., 542 P.2d 1275, 1282 (1975).

We further held that:

" * * * A home builder's implied warranty of fitness for habitation extends to subsequent purchasers for a *reasonable* length of time and is limited to latent defects which become manifest after the purchase. * * *" (Emphasis in original.) *Moxley v. Laramie Builders, Inc.*, Wyo., 600 P.2d 733, 736 (1979).

Subsequently we held that a builder might be held liable for negligence in se-

lecting a building site upon a theory of breach of implied warranty or negligence. An owner, subsequent to one who purchased from the builder, was allowed recovery. The interim owner was held not liable in the absence of knowledge or warning that his activities might have been a cause of the ultimate damage to that home, *ABC Builders, Inc. v. Phillips*, supra.

Liability for property damage occurring after the transfer of title and possession of real property has generally been limited to contractor-builders who sell directly to lay purchasers. *Schepps v. Howe*, Wyo., 665 P.2d 504 (1983); *Century Display Manufacturing Corp. v. D.R. Wager Construction Co., Inc.*, 46 Ill.App.3d 643, 4 Ill.Dec. 913, 360 N.E.2d 1346 (1977). Thus far we have restricted liability for defects in construction or selection of a building site to builders of new homes sold to purchasers who lacked knowledge or expertise about building. We have left open the question whether vacant land in a proper setting might be the subject to recovery for breach of an implied warranty and for negligence where damage results to a purchaser, *Tavares v. Horstman*, supra.

In *Stepanov v. Gavrilovich*, Alaska, 594 P.2d 30 (1979), the question presented was that of a developer's liability to builders for breach of implied warranty or upon strict liability where subdivided lots, not suitable for construction, were sold to builders for construction of homes for sale. The subdivided lots were unsuitable for building because of the presence of permafrost. The subdivider had conducted engineering studies in preparation for the subdivision which did not disclose the presence of permafrost. The court held that the subdivider would be liable for failure to disclose the presence of a condition, which caused the subdivided lots to be unsuitable for construction, only if the condition were known to the subdivider or could have been known through the exercise of reasonable care. After finding the developer had exercised reasonable care in employing the engineering firm, a judgment holding the subdivider not liable was affirmed.

Development of new land into subdivided lots for building, with streets, sewer, water and utilities is a necessary and beneficial activity that ought to be encouraged. The developer ought to also have responsibility for his activities. Yet, he should not be subject to liability for all misfortune that might befall a purchaser. Thus, it is reasonable that, where land is subdivided and sold for the purpose of constructing residential dwelling houses, the developer has a duty to exercise reasonable care to insure that the subdivided lots are suitable for construction of some type of ordinary, average dwelling house and he must disclose to his purchaser any condition which he knows or reasonably ought to know makes the subdivided lots unsuitable for such residential building. He has a further duty to disclose, upon inquiry, information he has developed in the course of the subdivision process which is relevant to suitability of the land for its expected use.

In this case, the developer had employed an engineering firm that conducted a drilling program, a soils study and analysis, and a determination of the depth of water table and drainage for the subdivision. The soils test report noted that in some areas the water table was within 3.8 feet of the surface; and, if basements were built below or within two feet of the water table, specific precautionary measures should be taken. The report also contained suggestions concerning soil compaction, concrete, sloping of lots, and use of drain tile. The developer advised the builders of the no-basement areas described in the soils report and further advised that they should stay two feet above the water table in building homes. He furnished no other information or warnings to the builders, nor did the builders seek or request additional information. There is no dispute about the fact that all of the subdivided lots are suitable for building homes and that most are suitable for homes with basements. It is also undisputed that some of the lots are not suitable for homes with basements. But, whether the particular house to be built was a house with no basement, a half basement, a tri-level house, or a full basement was a decision not involving the developer. The builder alone made that decision, and he neither sought out nor made inquiry of the developer about it.

The developer furnished lots that were suitable for construction of dwelling houses. That satisfied his duty to the purchasers. The developer, therefore, was not negligent nor was there a breach of an implied warranty resulting in liability; and he should not have been found liable.

With respect to the builders of these homes for sale to purchasers, it is apparent from all we have said that they had a duty to furnish a site that was suitable for the building they selected and determined should be erected. *ABC Builders, Inc. v. Phillips,* supra. Numerous courts have held that where a basement of a home is constructed below the water table and there is seepage of water into the basement which causes cracks, damage to the foundation, damage to personal property and causes the basement to be uninhabitable, there may be liability for breach of the implied warranty that the house is reasonably fit for habitation and for negligence in selection of the type of building, construction site selection or in the construction itself. *Waggoner v. Midwestern Development, Inc.,* 83 S.D. 57, 154 N.W.2d 803 (1967) and cases cited therein. In this case, each of the homeowners testified extensively to the seepage of water into their basements, to the damage resulting, to dampness and their inability to use or inhabit the basement. The evidence was overwhelming in support of the court's finding of liability, both upon breach of warranty and for negligence.

## III

### DAMAGES

The greatest difficulty in stating a general rule for recovery of damages has been in those cases involving damage to realty. 22 Am.Jur.2d Damages § 135. So much is subjective and uncertain in determining

fair market values before and after the damage, diminished values, whether the damage is permanent or temporary, the nature and extent of the damage and methods of repair. Thus, it is generally held that:

"* * * [W]here the injury to real property is of a permanent character, or cannot be repaired except at great expense, the measure of damages is the difference between the value of the property before and after the injury. * * *

* * * * * *

"* * * [W]here the damage to real property is of a temporary character, or where it can be repaired at a small expense, the cost of the repair has often been held to be the measure of damages. * * *" *Town Council of Town of Hudson v. Ladd*, 37 Wyo. 419, 263 P. 703, 705 (1928).

Either method of determining damages is acceptable. Neither is preferred over the other. These kinds of damages cannot be calculated with certainty. However,

"* * * if there is evidence from which a reasonable estimate of money damages may be made, that is sufficient, the primary objective being to determine the amount of loss, applying whatever rule is best suited for that purpose. * * *" *Douglas Reservoirs Water Users Ass'n v. Cross*, Wyo., 569 P.2d 1280, 1284 (1977).

Where the damage is to a dwelling house used for the personal purpose of the owner, it may be just that recovery be had for the amount of the repairs, even though that exceeds the entire value of the building, Restatement of Law, Torts 2d § 929; the diminished value of the property, because of a public awareness of a water problem, is also recoverable, that damage being measured as of the date of the injury. *Sagebrush Development, Inc. v. Moehrke*, Wyo., 604 P.2d 198 (1979).

In this case the builder's expert, using 1978 cost figures, testified that the injury resulting from water seepage could be corrected by the installation of drain tile around the foundations of the eight homes and removal and replacement of two of the basement floors at costs ranging from $3,520 to $9,813.95. The homeowners' expert testified that in addition to tiling around the foundations, removal and replacement of basement floors and other repairs were also necessary; and that using 1983 prices for labor and material, the cost of these repairs for the eight houses would range from $21,428 to $39,433. The builder contends that the cost of repair should have been determined as of the time of the injury, i.e., 1978, rather than 1983.

It is true the homeowners had a duty to mitigate their damage. That means that once an injury occurs, they must take reasonable measures (which may include repairs) to protect their property so that additional damage would not occur unnecessarily. This duty does not require that they repair the damage immediately to protect the tortfeasor from the effect of inflation or themselves from deflation in the future. *Rovetti v. City and County of San Francisco*, 131 Cal.App.3d 973, 183 Cal.Rptr. 1 (1982). There was no evidence that additional damage resulted from a failure to repair. The homeowners had just purchased their homes. Usually that is the most significant purchase one makes during a lifetime and requires a substantial down payment. Most did not repair. Perhaps they could not. They lived with seepage, water, uninhabitable basements. The tortfeasor has had the use of the money that should have gone to those repairs. That has value, is of benefit to him, and he will not be heard to complain. Thus where, at the time of trial, the damage has not been repaired, the homeowner is entitled to recover the amount reasonably necessary for the repairs at that time.

The court found that after the installation of tile and completion of repair, each of the eight homeowners incurred additional damage described as the diminished value of their property because of the reputation of the area for the water problem. This item of damage, as to each of

the eight houses, was between $9,450 and $14,000. The damage for diminished value was calculated based upon an appraisal of each of the properties as of April 1983. This element of damage was determined by applying a percentage described as "economic obsolescence" to the fair market value of each dwelling house as determined by the April 1983 appraisal. This was error. This element of damage should have been determined as of the time of the injury in 1978. *Sagebrush Development, Inc. v. Moehrke,* supra.

 The purchase price of each of these homes was in evidence and before the court. It was evidence of the fair market value of each home at the time of purchase in 1978. Damage from seepage resulted to each home within a few months of purchase. If the sum allowed for diminution in value is reduced by taking the purchase price of each home as its fair market value in 1978, and applying the percentage diminution fixed by the homeowners' expert witness, the resulting sum when added to the cost of repairs still exceeded the total amount awarded by the court.

The trial court noted that the homeowners' expert witness had considered factors that were inappropriate in arriving at his estimate of damage and the court, therefore, awarded a lesser sum to each homeowner than testified to by this witness. For example, with respect to the Haney residence, the homeowners' expert testified that the cost of repair was $21,428, the diminution in value, $13,900, making the total amount of damage $35,328. The court awarded Haney $24,731. In Hendricks' claim, the witness testified to the cost of repair as $31,350, the diminution in value as $12,900 for total damages of $44,-250. The court awarded damages to homeowner Hendricks in the amount of $30,975. The court awarded similar lesser amounts to the other homeowners. We cannot determine how the amount of damages awarded to each homeowner was determined. In giving this decision, the court stated that, referring to the homeowners' expert witness:

" * * * [H]e did consider other factors other than the water in the basement as having caused some of the depreciation * * * The Court has subtracted some of the award or the suggested damages * * and it is most fair to the Plaintiffs."

With an appropriate reduction of diminished value using 1978 fair market value and a further reduction for other factors improperly considered, the amount of damage awarded each homeowner is supported by the evidence.

We have recognized that these kinds of damages cannot be determined with mathematical precision, that they may be inherently uncertain, that it is sufficient that they be determined with a reasonable degree of certainty based upon the evidence adduced and the nature of the injury. *Sagebrush Development, Inc. v. Moehrke,* supra. The homeowners all have appealed claiming the awards of damage by the court were too low. The builder, on the other hand, has appealed claiming the awards of damage were too high. The trial judge stated the awards were fair. We agree with the trial court's determination. The damages awarded were within the range of damages established and are supported by the evidence. Therefore, they will not be disturbed on appeal.

 Generally, if the trial court arrives at a correct result, no matter how incorrectly it reasons, errors occurring at the trial, if not prejudicial, are cured by a proper final decision. *Rock Springs National Bank v. Luman,* 6 Wyo. 123, 42 P. 874 (1895). Prejudicial error is never presumed; it must be established by the parties. *Cervelli v. Graves,* Wyo., 661 P.2d 1032 (1983). Error is harmless when it is not prejudicial to the substantial rights of the party asserting it. 5 Am.Jur.2d Appeal and Error § 776. There were other factors the homeowners' expert considered in arriving at the diminished value, and taking these into consideration together with all other evidence in the case, we must conclude that the award of damages appears reasonable under the circumstances.

Damages were not awarded for injury to personal property. The decision announced from the bench was as follows:

> "The Court is not going to award damages for personal property. I feel that almost in toto there was a lack of proof of the amount of damages that should be awarded. * * *"

The trial judge's determinations with respect to facts and sufficiency of proof will not be disturbed on appeal unless clearly erroneous. Error does not appear in these determinations.

The decision of the trial court is reversed as to the developer and is affirmed in all other respects.