448 P.2d 709

EVEN ODDS, INC., Plaintiff and
Appellant,

v.

Milton C. NIELSON, Defendant and
Respondent.

No. 10826.

Supreme Court of Utah.

Dec. 18, 1968.

George M. McMillan, David S. Dolowitz, Salt Lake City, for plaintiff and appellant.

Duane A. Frandsen, Price, L. Robert Anderson, Monticello, for defendant and respondent.

CROCKETT, Chief Justice:

Plaintiff, Even Odds, Inc., as owner and lessor of mining claims, known as the Pete claims in San Juan County, sued its lessee, Milton C. Nielson, on two causes of action: (1) for damages of $50,000 for breach of restrictions in the lease; and (2) for $60,000, trebled for alleged wrongful removal of ore.

After a trial to the court judgment was given to the plaintiff on its first cause of action in the amount of $9,000, but allowed no recovery on the second cause of action.

Plaintiff appeals, stating its claim for relief as follows:

The Appellant asks this court to enter orders and make determination appropriate to accomplish the following results:

A. Determining and adjudicating that the damages awarded to the plaintiff were inadequate as a matter of law on the plaintiff's cause of action asserting a breach of contract (The First Cause of Action) and that plaintiff is entitled to damages in the sum of $29,188.53.

B. Determining and adjudicating that the plaintiff is entitled to recover on its cause of action asserting that the defendant was guilty of unlawfully mining and removing valuable ores from the Pete mine (The Second Cause of Action) and is entitled to recover damages in the sum of $73,319.89, trebled, under 40-1-12 UCA 1953.

Plaintiff contends that one of its principal motives in granting the lease was for exploration and development of the mine to condition it for future mining operations; that for this reason it was intended to allow the defendant Nielson to remove about 60 to 65 per cent of the ore in certain areas and leave the mine safely supported and with adequate haulageways for the plaintiff in its future mining operations, but that the defendant did not abide by the restrictions which are set forth in paragraph 4 of the lease:

4. Rights of Lessee. The Lessee shall have the right * * * to conduct exploratory drilling, mining and metallurgical operations * * * and to extract, produce, remove, process and ship or otherwise dispose of ores, minerals, and min-

eral products, provided nevertheless, that the maximum dimensions of any drift * * * which is necessary as a haulage way shall not exceed a distance of 10 feet wide and 10 feet high. * * * to make cross cuts, provided that pillars shall be left standing not less than 20 feet square or equivalent. * * * no stoping or stripping on said mining properties without the written consent of Lessor. Failure to comply with the terms of this paragraph shall constitute justification to the Lessor to cancel this lease without notice to Lessee.

As is not unusual in such a lawsuit, the evidence of the parties is in direct conflict as to some of the essential facts upon which determination of the issues depends. The evidence of the plaintiff was to the effect that the defendant Nielson had enlarged the drifts, reduced the pillars, and mined in several areas to a greater extent than allowed by paragraph 4 quoted above; and that after deduction of expenses of mining, haulage and other costs there would be a net loss to plaintiff calculated in amounts varying between $30,000 and upwards of $40,000.

Defendant Nielson's position and the evidence he relies on is that over a period of six years, under three successive similar leases, he had continuously conducted mining operations in the same way, and in substantial compliance with the terms of the leases as near as could practically be accomplished under the circumstances; that Mr. James L. Menlove and Mr. Melvin K. Dalton, president and secretary of the plaintiff, had made periodic inspections of his mining operations, and had made no complaints, but had on numerous occasions made favorable comments, including encouragement to get out more ore so they would receive more money as royalties. The trial court indicated his belief that the defendant had transgressed the terms of the lease in some areas of the mine and awarded the $9,000 judgment for excess ore taken.

Some controversy is injected into the case as to whether under the ruling as to evaluation set forth in the case of State By and Through Road Commission v. Noble [1] the correct method of assessing damages is to evaluate the entire mine before and after the wrongful taking of the ore. We take occasion to observe that we regard the two situations as quite different and that such is not the correct method of evaluation here. In the Noble case the objective was to arrive at a valuation of an acreage taken in condemnation proceedings. It was held that because of uncertainties in the future operation of a project, and other factors as explained in that opinion, it was improper to arrive at a value of the land by computing the potential tonnage of gravel which

1. 8 Utah 2d 405, 335 P.2d 831 (1959); 6 Utah 2d 40, 305 P.2d 495 (1957).

might be extracted and marketed at a given price.

 Speaking generally about damages, the desired objective is to evaluate any loss suffered by the most direct, practical and accurate method that can be employed. In this case the parties had fixed their own terms, including royalties to be paid, for dealing with the removal of ore from this mine on the basis of the amount of tonnage removed and the proceeds realized therefrom. That being so, where it was found that ore had been wrongfully removed and sold, the loss to the plaintiff would be the value of the ore taken, less these costs incurred by the defendant: the cost of extracting it from the mine; of transporting it to the market; and the royalty which he had already paid plaintiff on such ore. Applying this formula to the ore with respect to which the trial court indicated he believed that the defendant transgressed the terms of the lease, and using the figures of the engineer, Samuel Arentz, which is also the evidence the trial court indicated he would accept, produces the following computation:

```
Gross proceeds per ton ------------------------------------------$19.35
 Minus 1) cost of extraction from mine --------------$6.75
 Minus 2) cost of haulage to market ----------------- 3.77
 Minus 3) royalties already received on proceeds by
 plaintiff ------------------------------- 2.97 13.49
Net proceeds per ton to which plaintiff is entitled ----------------$ 5.86

$5.86 × 1757 tons (the approximate excess tonnage which
 defendant removed ---------------------- $10,296.00
```

◆

 We have no disagreement with the proposition that the fact-trier should not be permitted to arbitrarily ignore competent, credible and uncontradicted evidence. Nevertheless, he is not bound to slavishly follow the evidence and the figures given by any particular witness. Within the limits of reason it is his prerogative to place his own appraisal upon the evidence which impresses him as credible and to draw conclusions therefrom in accordance with his own best judgment.[2] This is especially so here where the question as to just how much of the ore was improperly removed depends to some extent upon estimates and is thus not reducible to absolute mathemat-

2. See statement in Arnold Machinery Co., Inc. v. Intrusion Prepakt, Inc., 151 Utah 2d 246, 357 P.2d 496; and Nichol v. Wall, 122 Utah 589, 253 P.2d 355; and Langley v. Pacific Gas & Electric Co., 41 Cal.2d 655, 262 P.2d 846.

ical precision. The figure of $9,000 damages arrived at and awarded by the trial court is sufficiently close to the computation on Mr. Arentz's figures above set forth to meet the test just stated.[3]

The principles of law and procedure we have stated above in reference to the first cause of action are applicable to the trial court's disposition of the plaintiff's alleged second cause of action. It is based on Sec. 40-1-12 U.C.A.1953, which provides in part:

> * * * any person who, *wrongfully entering* upon any mine or mining claim and carrying away ores therefrom, *or wrongfully extracting* and selling ores from any mine, having knowledge of the existence of adverse claimants * * * and without notice to them, *knowingly and willfully trespasses* in or upon such mine or mining claim and extracts or sells ore therefrom shall be liable to the owners of such ore for three times the value thereof * * *.

(Emphasis added.)

The purpose of the foregoing statutory provision is to impose a penalty upon and discourage the knowing and willful trespass upon mining claims and the wrongful extracting of ore therefrom. It is not applicable to the defendant in the circumstances here shown, where he was in lawful occupation of the mine under a valid lease and a bona fide dispute arose as to his right to continue in possession under it.

What we have already said herein also provides the answer to the plaintiff's contention that the court erred in refusing to award it attorney's fees under paragraph 12 of the lease. Moreover on this latter point, there was no proof offered as to the amount of the attorney's fees.[4]

Affirmed. The parties to bear their own costs.

CALLISTER, HENRIOD and TUCKETT, JJ., and D. FRANK WILKINS, District Judge, concur.

ELLETT, J., being disqualified, does not participate herein.

3. That where there is evidence to support the judgment we assume that the findings of the trial court are in accord with his judgment, see Western Gas Appliances, Inc. v. Servel, Inc., 123 Utah 229, 257 P.2d 950; and Mower v. McCarthy, 122 Utah 1, 245 P.2d 224, cited therein.

4. See Hurd v. Ford, 74 Utah 46, 276 P. 908; F.M.A. Financial Corp. v. Build, Inc., 17 Utah 2d 80, 404 P.2d 670.