**PRICE–OREM INVESTMENT COMPANY, a limited partnership, Plaintiff, Respondent and Cross–Appellant,**

v.

**ROLLINS, BROWN AND GUNNELL, INC., Defendant, Appellant and Cross–Respondent.**

No. 870550–CA.

Court of Appeals of Utah.

Dec. 14, 1989.

Jackson Howard, Leslie Slaugh, Provo, for defendant, appellant and cross-respondent.

Bryce D. Panzer, Salt Lake City, for plaintiff, respondent and cross-appellant.

Before BILLINGS, DAVIDSON and GARFF, JJ.

## OPINION

GARFF, Judge:

Appellant Rollins, Brown & Gunnell, Inc. (Rollins) appeals the trial court's judgment of $21,210.80 against it, pursuant to a tort action brought by respondent Price–Orem Investment Co. (Price–Orem). Price–Orem cross appeals, requesting prejudgment interest and a higher award of costs. We affirm.

During July 1973, John Price Associates, Price–Orem's general partner, contracted with Rollins to survey property owned by Price–Orem, which was to be developed into the Orem Plaza Shopping Center. Later, Price–Orem acquired a second parcel of property adjacent to the north boundary of the first parcel.

John Price Associates again contracted with Rollins to stake the layout of the shopping center buildings, which were to be built on both parcels of property. Rollin's employee erroneously surveyed the layout for the buildings.

Not realizing that this mistake had been made, Price–Orem commenced building in accordance with Rollins' faulty survey. On July 17, 1974, after construction on the shopping center had been started but before it had been substantially completed, Price–Orem discovered the error. Rollins admitted its mistake and sought to ameliorate the error by submitting to Price–Orem various proposals, costing about $3,000 apiece, to correct the error. Price–Orem, however, refused to implement any of these suggestions because of the resulting delay, possible loss of its anchor tenant, and potentially increased financing costs. Instead, Price–Orem determined to adjust for the error by shortening the shop space thirty feet. Because the shop space, as constructed, was seventy feet deep, Price–Orem lost 2100 square feet of shop space due to the error.

Price–Orem filed this action on September 5, 1974, which was tried before a jury on November 17 to 19, 1980. The jury returned a verdict for Price–Orem, assessing damages of $30,000. Rollins moved for judgment NOV, remittitur, or a new trial, asserting that damages were excessive because the evidence demonstrated that the cost of repair at the time the error was discovered was $3,000 and, also, that any additional retail space would have violated Orem City parking requirements.

On January 12, 1981, upon Rollins' motion, the trial court ruled that the evidence was insufficient to justify the verdict and granted a new trial. On the day of trial, however, the trial court determined that John Price Associates, which had not been named in the action, was a necessary and indispensable party. Upon Price–Orem's refusal to name John Price Associates in its complaint, the court dismissed the action. Price–Orem appealed. The Utah Supreme Court then reversed and remanded the case for trial.

The case again came to trial on June 1 to 3, 1987. Price–Orem introduced, as evidence showing the amount of damages, an appraisal made in 1977 by Ralph Wright, a professional appraiser. Using an income approach to valuation, Wright estimated that the present value of the lost income over forty years was $72,351 and the cost of constructing the lost space would have been $42,000, resulting in a net loss of $30,351. He based his appraisal upon 1977 economic assumptions rather than the actual rental history of the shopping center occurring after 1977. Price–Orem presented testimony that it had paid, additionally, $3,000 to redraw the shopping center plans, $210 for additional curb and gutter work, and $300 for extra piping. Rollins presented evidence concerning the amount of parking required for the complex and testimony that the shopping center, as presently constructed, did not have sufficient parking space to comply with the applicable Orem City parking ordinances.

The jury found both parties negligent, attributing forty percent to Price–Orem and sixty percent to Rollins. It determined

that Price–Orem had been damaged in the amount of $33,861. The jury reduced this amount by forty percent, the amount of Price–Orem's negligence, finding that Price–Orem was entitled to a net judgment of $20,316.60 plus costs. The trial court fixed costs at $894.20, which included Price–Orem's cost of transcripts on the previous appeal.

Rollins filed motions for a directed verdict, judgment NOV, and to tax costs, asserting that Price–Orem was not entitled to recover the cost of the previous trial transcripts. Price–Orem moved for an award of prejudgment interest on its damage award. The trial court ultimately awarded Price–Orem $20,317 in damages and $297.30 in costs, which did not include the cost of the transcripts. It also denied Rollins' motion for judgment NOV and Price–Orem's motion for prejudgment interest.

Rollins appeals and Price–Orem cross-appeals.

The parties raise the following issues: (1) Did the trial court err in admitting into evidence an appraisal based upon estimated income of the shopping center when actual income data was available? (2) Did the trial court err in denying Rollins' motion for directed verdict or judgment NOV where evidence was presented indicating that construction of the lost retail space would have violated Orem City parking ordinances? (3) Is Price–Orem entitled to an award of prejudgment interest? (4) Is Price–Orem entitled to an award for the cost of the trial transcripts used in the previous appeal?

## DAMAGES

Rollins asserts that the trial court erred by admitting into evidence Price–Orem's appraisal based upon the estimated income of the shopping center, when actual income data was available. It argues that Price–Orem's evidence was insufficient because historical data should have been relied upon, instead, to support the trial court's award of damages, and that Price–Orem's

only evidence for curb, gutter work, and plumbing expenses was unsupported testimony. Therefore, Rollins argues that the damage award was based upon unsubstantial and inadequate evidence and that its motions for directed verdict and judgment NOV should have been granted.

■ We note, initially, that we "will reverse a judgment based on a jury verdict 'only if, viewing the evidence in the light most favorable to the verdict, there is no substantial evidence to support it.'" *Canyon Country Store v. Bracey*, 781 P.2d 414, 417 (Utah 1989) (quoting *In re Estate of Kesler*, 702 P.2d 86, 88 (Utah 1985)). We find, first, under this standard, that Price–Orem's uncontroverted testimony as to the curb, gutter, and plumbing expenses was sufficient evidence to support the trial court's award of those expenses.

■ We must, however, still determine whether Price–Orem's appraisal was sufficient evidence to support the remainder of the judgment. The objective in rendering an award of damages is to award the injured party full compensation for actual losses incurred, *see Henderson v. For-Shor Co.*, 757 P.2d 465, 469 (Utah Ct.App. 1988), by evaluating any loss "suffered by the most direct, practical and accurate method that can be employed." *Even Odds, Inc. v. Nielson*, 22 Utah 2d 49, 448 P.2d 709, 711 (1968). It is well settled that, although the plaintiff has the burden of proving the fact, causation, and amount of damages, he need only do so with reasonable certainty rather than with absolute precision. *Canyon Country Store*, 781 P.2d at 418; *Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986) (per curiam); *Anderson v. Bauer*, 681 P.2d 1316, 1323–25 (Wyo.1984). "[A]lthough damages may not be determined by speculation or guesswork, evidence allowing a just and reasonable estimate of the damage based on relevant data is sufficient." *National Steel Corp. v. Great Lakes Towing Co.*, 574 F.2d 339, 342 (6th Cir.1978).[1]

---

1. While an award of damages based only upon speculation cannot be upheld, some degree of uncertainty in the evidence of damages will not relieve the defendant from compensating a wronged plaintiff. *Sampson v. Richins*, 770 P.2d 998, 1007 (Utah Ct.App.1989).

Rollins admits that its actions caused Price–Orem's damages, acknowledging that the only issue remaining is the amount of damages. We must, therefore, determine whether Price–Orem's evidence of lost profits, namely Wright's appraisal, is too speculative to support the jury's award of damages.

■ Reasonable certainty is "sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were actually suffered." *Canyon Country Store,* 781 P.2d at 418 (quoting *Cook Assocs., Inc. v. Warnick,* 664 P.2d 1161, 1165 (Utah 1983)). However, the level of certainty required to establish the amount of loss is generally lower than that required to establish the fact of loss, *Sampson v. Richins,* 770 P.2d 998, 1007 (Utah Ct.App.1989), but requires more than a mere estimate of net profits, to wit: the plaintiff must provide supporting evidence of overhead expenses and other costs of producing income from which a net income figure can be derived. *Sawyers,* 722 P.2d at 774. Thus, "[t]he amount of damages may be based upon approximations, if the fact of damage is established, and the approximations are based upon reasonable assumptions or projections." *Sampson,* 770 P.2d at 1007 (quoting *Atkin Wright & Miles v. Mountain States Tel. Co.,* 709 P.2d 330, 336 (Utah 1985)).

■ The record establishes that Wright's appraisal was not based upon mere speculation or guesswork, but, instead, was found by multiplying 2100 square feet, the amount lost as a result of the error, by the annual rental rate for comparable retail space in the area in 1977, $3.75 per square foot. Wright arrived at this rental rate by investigating tenants occupying the Orem Plaza Shopping Center and other similar shopping centers in the Orem–Provo area. He then deducted amounts for vacancy and loss, management expense, and a repair and replacement reserve, leaving a net annual income of $7,120 from the disputed area. He based his five percent vacancy estimate upon experience in comparable projects at that time, noting that this was also a standard estimate used generally in valuation of retail space.[2] He then discounted this $7,120 annual figure over the projected forty-year life of the shopping center. While such an estimate cannot generate the precise amount of loss, we find that it was not based upon speculation or guesswork, but upon historical data and assumptions derived from such data.[3] Further, it included evidence of the costs of producing income from the disputed square footage so that a net income figure could be derived. Therefore, we agree with the trial court that the evidence was not too speculative to support the damage award.[4]

■ Rollins urges us to disregard Wright's appraisal, which was made in 1977, three years after the damage occurred, in favor of the actual rental history of the shopping center during the subsequent thirteen years. We find this assertion to be without merit because, generally, the measure of damages for permanent

2. At the time Wright made his appraisal in 1977, the Orem Plaza Shopping Center was completely occupied. Subsequently, the shopping center experienced a very high number of vacancies.

3. The facts in this case are distinguishable from those in *Canyon Country Store v. Bracey,* 781 P.2d 414 (Utah 1989), in which the Utah Supreme Court found insufficient evidence to prove lost profits for a trucking operation. Allegedly, the insurers' failure to pay under the policy caused the loss of future profits. The only evidence presented regarding the amount of damages was an estimate based upon the average amount made per haul by independent truckers working for Associated Grocers and multiplied by a theoretical number of potential customers. Because this estimate was based totally upon theoretical numbers, rather than upon any historical facts, the supreme court found that it was too speculative to support the jury's award of damages. *Canyon Country Store,* 781 P.2d at 419. Here, however, Price–Orem definitely proved the number of square feet at issue and the other figures relevant to the estimate were based upon then-current historical data, affording an estimate with a much stronger basis in reality.

4. The trial court found: "The evidence presented in this case is not so meager as to invite sheer speculation; imprecise as it is, but counsel's arguments, the court's instructions, and the common sense of the jury place the evidence in proper perspective for resolution of the damage issue."

injury to real property is the difference between the market value of the property immediately before and immediately after the injury. *Ault v. Dubois,* 739 P.2d 1117, 1120 (Utah Ct.App.1987); 22 Am.Jur.2d *Damages* § 401 (1988). This measure of damages is appropriate where "the injury to real property is of a permanent character, or cannot be repaired except at great expense." *Anderson,* 681 P.2d at 1324. Although the plaintiff is required to take reasonable steps to prevent the accumulation of damages and to minimize the effect of defendant's negligence, this duty applies only to damages which the plaintiff can prevent, not to damages which have already occurred. *National Steel Corp.,* 574 F.2d at 343.[5]

Here, Rollins' mistake has lead to a permanent injury. The additional 2100 feet cannot be attached to the existing, occupied shopping center apart from tearing down and rebuilding a major portion of the center at significant inconvenience to the tenants and great expense to Price–Orem. Because liability attached at the time of the loss, *see id.,* Wright's appraisal, made in 1977, is more relevant to the actual loss incurred under this measure of damages than the subsequent historical data. We find Price–Orem's argument to be without merit because "a defendant cannot take advantage of events occurring *after* harm has occurred and liability has attached to reduce the damages for that harm." *Id.* (Emphasis in original.)

"[T]he pivotal question is not whether the plaintiff has proven an established earning record but whether he has proven the damages for lost profits with reasonable certainty." *Canyon Country Store,* 781 P.2d at 418 (quoting *Clark v. International Harvester Co.,* 99 Idaho 326, 346–47, 581 P.2d 784, 804–05 (1978)). Because the evidence supports the trial court's findings as to the existence and the amount of damages, we sustain the trial court's findings. *See Sawyers,* 722 P.2d at 774; *Sather v. Pitcher,* 748 P.2d 191, 194 (Utah Ct. App.1987). We, therefore, affirm the trial court's award of damages to Price–Orem.

## JUDGMENT NOV

Rollins claims that the trial court erred in denying its motion for directed verdict or judgment NOV after it presented evidence that the shopping center, as finally constructed, violated Orem City parking ordinances, and that the lost retail space would also have violated these ordinances. Rollins reasons that because the construction of the lost space would have been illegal, Price–Orem suffered no legally cognizable damage, thus making a directed verdict an appropriate resolution of the case.

Pursuant to rule 8(c) of the Utah Rules of Civil Procedure, illegality is an affirmative defense which must be affirmatively pleaded.[6] *Triple I Supply, Inc. v. Sunset Rail, Inc.,* 652 P.2d 1298, 1300 (Utah 1982).

Rollins did not raise its illegality argument in its pleadings filed prior to the first jury trial. It raised the issue, however, in a memorandum of points and authorities filed in connection with the first jury trial.

---

**5.** A second measure of damages which may be used is the cost of repairing the property by restoring it to its condition immediately prior to the injury. *Ault v. Dubois,* 739 P.2d 1117, 1120 (Utah Ct.App.1987); 22 Am.Jur.2d *Damages* § 401 (1988). This may be used if its cost is less than the diminution in the market value of the land approach above. *Ault,* 739 P.2d at 1120; *Leishman v. Kamas Valley Lumber Co.,* 19 Utah 2d 150, 427 P.2d 747, 749 (1967). It is appropriately used where "the damage to real property is of a temporary character, or where it can be repaired at a small expense." *Anderson,* 681 P.2d at 1324 (quoting *Town Council of Town of Hudson v. Ladd,* 37 Wyo. 419, 263 P. 703, 705 (1928)).

This measure of damages is inappropriate in this case. The record contains evidence indicating that at the time the injury was discovered, repair would have likely resulted in delay which would have jeopardized both the rental of the project to the anchor tenant and Price–Orem's favorable financing agreement at a time of rapidly escalating interest rates, both of which were contingent upon a tight construction timetable. Loss of either of these would have resulted in enormous expense to Price–Orem.

**6.** Relevant portions of rule 8(c) of the Utah Rules of Civil Procedure state: "In pleading to a preceding pleading, a party shall set forth affirmatively ... illegality ... and any other matter constituting an avoidance or affirmative defense."

On appeal from the first trial, the Utah Supreme Court recognized that the issue of illegality had been raised and litigated below. *Price–Orem Inv. Co. v. Rollins, Brown and Gunnell, Inc.*, 713 P.2d 55, 57 (Utah 1986).[7] Prior to the second trial, Rollins successfully moved to amend its answer to include illegality as an affirmative defense. Rollins then presented a substantial amount of evidence as to this issue during the trial. Thus, Rollins sufficiently raised its illegality defense. Therefore, we must now determine whether or not a directed verdict on this issue was appropriate.

"A motion for a directed verdict is a method of testing the legal sufficiency of the evidence presented." *Cerritos Trucking Co. v. Utah Venture No. 1*, 645 P.2d 608, 611 (Utah 1982). In directing a verdict, the trial court may not weigh the evidence, but "must consider the evidence in the light most favorable to the party against whom the motion is directed and resolve controverted facts in his favor." *White v. Fox*, 665 P.2d 1297, 1300 (Utah 1983) (quoting *Cruz v. Montoya*, 660 P.2d 723, 728–29 (Utah 1983)). If the evidence and the reasonable inferences from it would cause reasonable men and women to arrive at different conclusions, then the issue is one of fact for the jury and it is inappropriate for the judge to direct the verdict. *Id.; see also First Security Bank v. Banberry Crossing*, 780 P.2d 1253 (Utah 1989); *VanDyke v. Mountain Coin Mach. Distribs., Inc.*, 758 P.2d 962, 964 (Utah Ct.App.1988). Thus, the case may not be taken from the jury by the granting of a motion for a directed verdict if there is any substantial dispute in the evidence. *Cerritos Trucking Co.*, 645 P.2d at 611. Consequently, in reviewing Rollins' challenge to the trial court's denial of a motion for a directed verdict, we view the evidence and all reasonable inferences that may fairly be drawn from it in the light most favorable to the party moved against, and sustain the denial if reasonable minds could disagree with the ground asserted for directing the verdict. *White*, 665 P.2d at 1300; *Ostler v. Albina Transfer Co.*, 781 P.2d 445 (Utah Ct.App.1989).

Rollins placed in evidence Orem City Ordinance 232, in effect from 1973 to 1979, which specified the number of parking spaces required for various commercial establishments. This ordinance, in pertinent part, states:

H. Retail stores, shops, etc., except as provided in No. "C" above. Five and one-half (5.5) off-street parking spaces for each 1000 square feet of floor space contained in the building exclusive of furnace and mechanical and utility rooms, enclosed walkways, malls, and restrooms,

. . . .

M. Restaurants. One (1) space for each 2.5 seats or three (3) spaces per 100 square feet of floor area, whichever is greater.

. . . .

Section III. Any person violating any of the provisions of this Ordinance shall be guilty of misdemeanor, and upon conviction thereof shall be punished by a fine in any sum not exceeding $299.00, or by imprisonment for a period of thirty (30) days, or both fine and imprisonment. Each and every day such violation shall be continued shall be considered a separate offense.

On the basis of this ordinance, Rollins' expert witness introduced the following reasoning to the jury: The total retail shop area was 84,900 square feet, requiring 467 parking spaces. The total restaurant space at the time of trial required 279 parking spaces, making a total number of 736 required spaces. The shopping center, however, contained only 490 spaces, making the then-current situation illegal. Because the 2100 additional square feet would have required an additional eleven and one-half

---

7. The Utah Supreme Court stated:
   Rollins, Brown also claimed that the shopping center had been initially designed without sufficient parking space to meet zoning requirements and would have been unlawful if constructed as designed; therefore, Price–Orem suffered no damages because the loss of the shop space brought the parking space into compliance with the zoning laws.
   *Price–Orem Inv. Co.*, 713 P.2d at 57.

parking spaces, awarding damages to Price–Orem would sanction its violation of the law.

Price–Orem, on the other hand, introduced the following evidence: First, under the ordinance, restaurants require much more parking space than retail stores or banks, so the amount of parking space required is dependent upon the use to which the property is put. At the time Price–Orem introduced the site plan to Orem City, the only firm tenant was a major retail chain store, so Price–Orem was considering various options regarding the usage of the remainder of the complex, namely, professional offices, banking, and additional retail space. Later, three restaurants went in, but Rollins' expert witness admitted that if the restaurant areas had, indeed, been used for professional offices or retail space, the parking requirement would have been much lower and the number of parking spaces would have been within legal limits. Consequently, Price–Orem could have utilized the property, including the lost 2100 square feet, in a manner consistent with the parking ordinance. Second, the information upon which Rollins based its argument was obtained in 1980 and was relevant to the then-existing conditions, but was not relevant to the situation as it existed in 1974 when the damage occurred. Finally, Price–Orem introduced testimony that the Orem City Planning Commission approved the project as originally planned, which included the lost 2100 feet and the presently existing amount of parking space.

Considering this evidence in the light most favorable to Price–Orem, we conclude that reasonable men and women could conceivably arrive at different conclusions from this evidence.[8] Therefore, the task of weighing the evidence on this issue was appropriately left to the jury. We affirm the trial court's denial of Rollins' motion for a directed verdict.

## PREJUDGMENT INTEREST

■ Price–Orem asserts that it is entitled to an award of prejudgment interest pursuant to Utah Code Ann. § 15–1–1 (1953).[9]

The Utah Supreme Court has set down guidelines for allowing prejudgment interest:

[W]here the damage is complete and the amount of loss fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time and not from the date of the judgment. On the other hand, where damages are incomplete or cannot be calculated with mathematical accuracy, such as in case of personal injury, wrongful death, defamation of character, false imprisonment, etc., the amount of the damage must be ascertained and assessed by the trier of the fact at the trial, and in such cases prejudgment interest is not allowed.

*Bjork v. April Indus., Inc.,* 560 P.2d 315, 317 (Utah 1977), *cert. denied* 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245; *see also Canyon Country Store,* 781 P.2d at 422; *Uinta Pipeline Corp. v. White Superior Co.,* 546 P.2d 885, 887 (Utah 1976) (citing *Fell v. Union Pac. Ry. Co.,* 32 Utah 101, 88 P. 1003, 1005 (1907)).

8. We agree with the trial court's finding:

Since conflicting evidence was presented at trial regarding whether plaintiff's proposed use violated the applicable city ordinance at the time the damages were incurred, the jury was free to determine that plaintiff's proposed use was in compliance with the applicable city ordinance and to reject defendant's claim that the proposed use was illegal and contrary to public policy.

9. Utah Code Ann. § 15–1–1(1) (1953) states:

(1) Except when parties to a lawful contract agree on a specified rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 6% per annum. Nothing in this section may be construed to in any way affect any penalty or interest charge which by law applies to delinquent or other taxes or to any contract or obligations made before May 14, 1907.
This section was amended in 1981 to increase the rate of interest from six percent to ten percent.

While it is undisputed that Price–Orem's damages were complete and the loss was fixed on July 17, 1974, the time of the mistake, whether the damages can be calculated with sufficient accuracy to support an award of prejudgment interest remains in dispute. Price–Orem argues that its damages could be calculated with mathematical accuracy because the requested dollar amount was based upon expert testimony and specific facts. Rollins, however, asserts that this is not a case in which damages are calculable with mathematical certainty, so prejudgment interest is inappropriate.

For damages to be calculable with mathematical certainty, they must be ascertained

> in accordance with fixed rules of evidence and known standards of value, which the court or jury must follow in fixing the amount, rather than be guided by their best judgment in assessing the amount to be allowed for past as well as for future injury, or for elements that cannot be measured by any fixed standards of value.

*Fell*, 88 P. at 1007.[10] On the other hand, interest cannot be allowed in cases where "damages are incomplete and are peculiarly within the province of the jury to assess at the time of the trial." *Id.* at 1006. In particular, damages ascertained by determining the fair market value of real property before and after the damage "cannot be determined with mathematical precision, [and] may be inherently uncertain." *Anderson*, 681 P.2d at 1325. Consequently, as stated above, "it is sufficient that they

be determined with a reasonable degree of certainty based upon the evidence adduced and the nature of the injury." *Id.*

The present case is clearly one in which the damages cannot be determined with mathematical precision. As in *Anderson v. Bauer*, 681 P.2d at 1325, the damages are not determinable with mathematical precision, and although the evidence is sufficient to support the damage award, it is far too uncertain to support a prejudgment interest award. As in *Canyon Country Store*, "[w]hile the basis of the 'formula' used to determine ... lost profits may have been sufficient for the jury to render a verdict in [Price–Orem's] favor ... it is too speculative to allow for the addition of prejudgment interest." *Canyon Country Store*, 781 P.2d at 422.[11] We find, therefore, that this determination was within the jury's province, and affirm the trial court's denial of Price–Orem's motion for prejudgment interest.

## COST OF TRIAL TRANSCRIPTS

Price–Orem claims that the trial court erred in refusing to award it the $614.90 it spent for trial transcripts on the first appeal, which was resolved in its favor.

Under rule 34(d) of the Rules of the Utah Court of Appeals,

> [w]hen costs are awarded to a party in an appeal from a district court ... a party claiming costs shall, within 15 days after the remittitur is filed with the clerk of the court from which the appeal was

---

**10.** Such mathematical certainty was found in *Anderson v. State Farm Fire & Casualty Co.*, 583 P.2d 101 (Utah 1978), in which the defendant insurance company was ordered to pay the appellant's loss claim of $4,390.40, based upon the appellant's undisputed testimony concerning the value of the lost property. Likewise, in *Jorgenson v. John Clay & Co.*, 660 P.2d 229 (Utah 1983), in which the buyer broke a contract to purchase the seller's sheep, the seller was awarded prejudgment interest upon damages which were based upon the difference between what he should have received under his contract for the sale of his sheep and what he actually received, even though the sheep varied in weight. Similarly, prejudgment interest was ap-

propriate for specific overpayments to an irrigation company in *Staker v. Huntington Cleveland Irrigation Co.*, 664 P.2d 1188 (1983).

**11.** In *Canyon Country Store*, the supreme court reasoned:

> The store was not an established business with a long-term history of profits. It was open for approximately fourteen months and never made a net profit. Due to pending foreclosure and bankruptcy proceedings, it is uncertain whether the store could have stayed in business even had the insurance claim been promptly paid. *Canyon Country Store*, 781 P.2d at 422.

taken, serve upon the adverse party and file with the clerk of that court an itemized and verified bill of costs.

Price–Orem did not file the required itemized bill of costs with the clerk of the appropriate court within fifteen days after the remittitur was filed, but, instead, filed it nearly five months later. Consequently, Price–Orem is not eligible to receive an award for its costs for trial transcripts.

Affirmed.

BILLINGS and DAVIDSON, JJ., concur.