Robert B. KLINGER and Karol
J. Klinger, Plaintiffs,

v.

Eugene E. KIGHTLY, Helen L. Kightly,
Harry D. Kreis, Peggy R. Kreis Barnett,
Defendants, Third–Party Plaintiffs and
Appellees,

v.

Glen H. CALDER, and John Doe Wilson,
individually and dba Wilson Calder,
Third–Party Defendants and Appellant.

No. 930525–CA.

Court of Appeals of Utah.

Jan. 25, 1995.

Rehearing Denied Feb. 22, 1995.

Robert F. Babcock (argued) and Brian J. Babcock, Walstad & Babcock, Salt Lake City, for appellant.

Ephriam H. Fankhauser (argued), Salt Lake City, for appellees.

Before BENCH, JACKSON and WILKINS, JJ.

## OPINION

JACKSON, Judge:

In this third-party suit, Glen H. Calder appeals the trial court's judgment in favor of Eugene E. Kightly, Helen L. Kightly, Harry D. Kreis, and Peggy R. Kreis Barnett (third-party plaintiffs). We affirm in part and reverse in part.

## BACKGROUND

On June 2, 1971, third-party plaintiffs bought thirty acres of land in Duschesne County for $5,550 from Strawberry River Estates (Strawberry River) by a uniform real estate contract.[1] The original parcel was "T"-shaped, with about twenty acres west of Red Creek and about ten acres east of Red Creek. On October 3, 1971, by handwritten agreement,[2] Strawberry River conveyed to third-party plaintiffs two unmarketable five-acre parcels on each side of the ten acres east of Red Creek. Strawberry River drew up a new uniform real estate contract back-dated to June 2, 1971, using a new metes and bounds description which—unbeknownst to third-party plaintiffs—contained an incorrect point of beginning one thousand feet east of where the description in the original contract

---

[1.] The metes and bounds description of the parcel on this contract stated:

Beginning 990' South of the North line of Section 11, Township 4 South, Range 8 West, USM, to center of Red Creek, Thence West 1320', Thence South 660', Thence East 1320', Thence North 165', Thence East 1320', Thence North 330', Thence West 1320', Thence North 165' to beginning point at center of Red Creek, Consisting of Thirty (30) acres and no more.

[2.] The agreement reads in pertinent part as follows:

This is to certify that all of lots 30 and 31 along Red Creek ... as platted by Edmund W. Allen, Civil Engineer ..., shall be included in the Contract of Sale ... and that the Contract of Sale will be modified to include this additional acreage at no additional cost, and that the total acreage will amount to forty (acres) total on both sides of the creek.

and the handwritten agreement began.[3] The new description omitted the twenty acres west of Red Creek.

A few months later, Merrill Gunderson, Floyd Ostler, and John Stafford were hired to survey the forty acres.[4] They placed rebar stakes in the property's corners, showing boundaries consistent with third-party plaintiffs' understanding and the informal description of the property in the handwritten agreement, but inconsistent with the second metes and bounds description. Subsequently, third-party plaintiffs received a survey certificate dated May 15, 1972 and inscribed, "WILSON & CALDER CONSULTING ENGINEERS AND SURVEYORS DUCHESNE UTAH." The certificate showed a diagram of the property consistent with third-party plaintiffs' understanding and the informal description of the property from the handwritten agreement. However, the certificate also showed the incorrect metes and bounds description from the second real estate contract around the diagram's perimeter. Because Gunderson, Ostler, and Stafford were not licensed surveyors, they had paid Calder to sign the certificate, which stated:

I, Glen H. Calder, do hereby certify that I am a Registered Land Surveyor in the State of Utah, and that the plat described hereon portrays a survey made by me or under my direction. I further certify that the above plat correctly shows the true dimensions of the property surveyed and of the improvements located thereon; and further that there are no encroachments on said property.

For the next several years, third-party plaintiffs used and improved what they believed to be their forty acres, including the twenty acres west of Red Creek. When they paid the balance of the purchase price, they received a warranty deed dated October 24, 1980, with a metes and bounds description similar to the incorrect one on the second uniform real estate contract. The only difference between the two descriptions was that the warranty deed stated, "Beginning at a point 330 feet West," where the contract had stated, "Beginning at a Point 320 feet West." Third-party plaintiff Eugene Kightly testified he had noted the ten-foot difference but had not been alarmed by what he considered to be a slight discrepancy and typographical error.

Third-party plaintiffs sold the property to Robert and Karol Klinger (the Klingers) on July 23, 1983, for $32,000. Before buying the property, the Klingers had visited it with a realtor two or three times, using the described survey certificate to inspect the premises. Third-party plaintiffs accompanied the Klingers on one visit and—relying on the survey certificate—showed them the rebar stakes marking twenty acres west of Red Creek and twenty acres east of Red Creek. The warranty deed to the Klingers showed the same metes and bounds description as the warranty deed previously received by third-party plaintiffs.

3. The new metes and bounds description reads:

Beginning at a Point 320 feet West and 990 feet South of the Northeast Corner of Section 11, Township 4 South and Range 8 West, U.S.M., thence West 2640 feet, thence South 660 feet, thence East 2640 feet, thence North 660 feet to Point of Beginning. Consisting of forty acres.

4. The parties dispute who hired the surveyors. Third-party plaintiffs claim they hired the surveyors, while Calder claims Strawberry River hired the surveyors. The trial court made the following findings regarding this issue:

7. Although Third Party Plaintiffs had been shown the approximate location of the 40 acre parcel, they made inquiry of Strawberry River Estates about surveying the property. Third Party Plaintiffs did not know any other property owners who had had their property surveyed. Because of their concerns and reservations about the property description in the new Uniform Real Estate Contract, they wanted to establish the location and boundaries of their property.

8. Acting on information given by representatives of Strawberry River Estates, Third Party Plaintiffs (the Kightlys) contacted a surveyor at the Duchesne office of Third Party Defendant, Wilson Calder. Mr. Kightly asked that the subject property be surveyed to establish an exact location and boundaries, leaving a copy of the Uniform Real Estate Contract (Ex. P–6) with the metes and bounds description of the 40 acre parcel.

In early 1985, the Klingers discovered the problem with the property descriptions. Third-party plaintiffs were notified that the survey's metes and bounds description placed the west property boundary only a few feet west of Red Creek and was off by about one thousand feet. The Klingers successfully sued third-party plaintiffs for rescission. Third-party plaintiffs were ordered to return the payments Klingers had already made, including taxes and interest paid, totaling $13,851.59. When the Klingers reconveyed the property to third-party plaintiffs, its value had substantially decreased since 1983.

In May of 1986, third-party plaintiffs sued Calder for negligence, asserting he failed to "properly survey and locate the subject property." The trial court granted Calder's motion to dismiss the case on the ground that the statute of limitation barred third-party plaintiffs' suit regarding work done in 1972. *See* Utah Code Ann. § 78–12–25(2) (1987) (providing "an action for relief not otherwise provided for by law" must be brought within four years). In its ruling, the court rejected third-party plaintiffs' argument that the court should apply the "discovery rule"[5] to toll the statute of limitation. Third-party plaintiffs had asserted that their "cause of action arose when the mistake was discovered, in January or February of 1985." Third-party plaintiffs appealed to the Utah Supreme Court, which reversed the trial court and held "[t]he discovery rule should be applied to the statute of limitation for surveyor negligence under Utah Code Ann. § 78–12–

25(2)." *Klinger v. Kightly,* 791 P.2d 868, 872 (Utah 1990).

On remand, a trial was held to determine Calder's liability. The trial court found Calder "negligent in the survey of the property, which resulted in Plaintiff selling the wrong property." The court awarded third-party plaintiffs "$29,383.00, together with interest thereon ... from July 30, 1987, the date of reconveyance of the subject property to Third Party Plaintiffs, in the amount of $15,915.80, together with costs in the amount of $1,279.72." Calder appeals from that judgment.

## ISSUES

Calder asserts the following on appeal: (1) The trial court misapplied the discovery rule to the statute of limitation; (2) John Stafford's diary should not have been excluded as hearsay evidence; (3) the trial court erred in finding and calculating damages; and (4) prejudgment interest should not have been awarded.[6]

## ANALYSIS

### I. Statute of Limitation

■ Calder makes the following argument: Because third-party plaintiffs knew in 1980 that their deed showed a metes and bounds description ten feet different from that shown in the second uniform real estate contract, they should have investigated and

---

5. In an earlier appeal of this case, the Utah Supreme Court explained the "discovery rule":
   Under the discovery rule, a cause of action does not accrue and the statute of limitation does not begin to run until the plaintiff learns of or in the exercise of reasonable diligence should have learned of the facts which give rise to the cause of action. The discovery rule functions as an exception to the normal application of a statute of limitation.
   *Klinger v. Kightly,* 791 P.2d 868, 869 (Utah 1990) (footnotes omitted).

6. Calder also argues that certain costs should not have been awarded and that the trial court should not have denied without a hearing his objections to the court's findings of fact and conclusions of law.

Calder's argument about the award of costs is merely a labeling problem. The trial court included "costs" from both the Klinger rescission trial and third-party plaintiffs' appeal of Calder's dismissal from that action. Those amounts should have been awarded as damages, not costs. *Cf. South Sanpitch Co. v. Pack,* 765 P.2d 1279, 1282 (Utah App.1988) ("[W]hen the natural consequence of one's negligence is another's involvement in a dispute with a third party, attorney fees reasonably incurred in resolving the dispute are recoverable from the negligent party as an element of damages.")

The argument that the trial court improperly denied Calder's request for a hearing is without merit; thus, we decline to address it. *State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989).

discovered the larger problem of the survey then. Thus, the trial court should have found the discovery rule tolled the four-year statute of limitation only until 1980, and barred the action brought in 1986.

Calder asks this court to revisit the exact issue the supreme court decided in the prior appeal. *See Klinger v. Kightly*, 791 P.2d 868, 872 (Utah 1990). Because application of the discovery rule is a question of law, *id.* at 869, the supreme court reviewed the case de novo and weighed the prejudice that would accrue to each side if the rule were applied. Deciding the discovery rule should be applied *in this case* to toll the statute of limitation and allow third-party plaintiffs' case to go·forward, the court said: "Th[ird-party plaintiffs] had no reason to suspect that the survey was inaccurate, nor did they refrain from doing anything that might reasonably have been expected of them that could have disclosed the error." *Id.* at 872.

Accordingly, we conclude that the prior ruling of the supreme court is controlling as the law of this case. *See Mascaro v. Davis*, 741 P.2d 938, 946–47 (Utah 1987); *Murphy v. Crosland*, 886 P.2d 74, 76 n. 1 (Utah App. 1994). The trial court had no choice but to do what it did—comply with the supreme court's determination and hold a trial on the merits, without further addressing the statute of limitation issue.

## II. Hearsay Evidence

### A. Admitting business record

■ Calder argues that the trial court committed reversible error when it refused to admit into evidence the diary of surveyor John Stafford pursuant to the business rec-

ord exception to the hearsay rule. Stafford died before the trial, but left dated notes about the survey in a business diary. Calder's attorney offered the diary as evidence of the relationship between the parties at the time of the survey. In particular, he asserted the diary would show Strawberry River—not third-party plaintiffs—hired the surveyors.[7]

We defer to the trial court's decision about whether a proper foundation for evidence admission " 'is laid and sufficient showing of the credibility of the evidence is established. The ruling of the trial court in this regard will not be overturned unless there is a showing of an abuse of discretion.' " *Procon Corp. v. Utah Dep't of Transp.*, 876 P.2d 890, 893 (Utah App.1994) (quoting *State ex rel. Marquez*, 560 P.2d 342, 342–43 (Utah 1977) (footnote omitted)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Utah R.Evid. 801(c). Stafford's diary was indeed hearsay. It contained statements by Stafford, who could not testify at the trial, offered to prove the truth of Calder's assertion that Strawberry River—not third-party plaintiffs—hired the surveyor.

However, business records satisfying the criteria of Utah Rule of Evidence 803(6) are not excluded as hearsay.[8] "For evidence to be admissible as a business record, a proper foundation must be laid to establish the necessary indicia of reliability." *State v. Bertul*, 664 P.2d 1181, 1184 (Utah 1983). The four requirements for a proper foundation are as follows:

"(1) the record must be made in the regular course of the business or entity which

---

7. He also asserted the diary would show the surveyors based their survey on the "Edmund Allen plat," *see supra* note 2, not the metes and bounds description on the uniform real estate contract. We address this assertion in footnote nine.

8. Utah Rule of Evidence 803(6) states:
   Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions,

opinions or diagnoses, made at or near the time by ... a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the ... data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness....

keeps the records; (2) the record must have been made at the time of, or in close proximity to, the occurrence of the act, condition or event recorded; (3) the evidence must support a conclusion that after recordation the document was kept under circumstances that would preserve its integrity; and (4) the sources of the information from which the entry was made and the circumstances of the preparation of the document were such as to indicate its trustworthiness."

*Trolley Square Assocs. v. Nielson*, 886 P.2d 61, 67 (Utah App.1994) (quoting *Bertul*, 664 P.2d at 1184). The foundation must be laid using "the testimony of the custodian [of business records] or other qualified witness." *See* Utah R.Evid. 803(6).

We conclude that the trial court abused its discretion in rejecting the testimony of Floyd Ostler, Stafford's co-worker in 1972, as a "qualified witness" to establish a proper foundation for admitting Stafford's diary.[9] "The foundation facts may be proved by any relevant evidence and the person making the entries in the records need not be called to authenticate them if they can be identified by someone else who is qualified by knowledge of the facts." *Olathe Ready–Mix Co. v. Frazier*, 220 Kan. 646, 556 P.2d 198, 199 (1976); *see also Hansen v. Heath*, 852 P.2d 977, 981 (Utah 1993) ("[R]ule 803(6) allows *any* qualified witness to lay the proper foundation for a record, not just the custodian or the person who created the record.").

Meeting requirements one and two of the *Bertul* standard, Ostler's testimony established that Stafford's diary was kept in the regular course of their business and contemporaneous with the events of 1972. He stated, "I'm aware that he [Stafford] did keep a

diary and he knew he was keeping one at the same time because each one of us [Gunderson, Ostler, and Stafford] got a diary at the same time." Also, confirming its contemporaneous nature, the diary contains regular dated entries regarding the trio's survey activities. *See In re Japanese Electronic Prods.*, 723 F.2d at 288 (stating "requirements for qualification as a business record can be met by ... a combination of direct and circumstantial evidence").

Requirements three and four address the trustworthiness or reliability of the diary (i.e., preservation of integrity and circumstances of preparation). *Bertul*, 664 P.2d at 1184. A court need not "independently analyze the procedures used by a business or its employees in making regularly kept records of regularly conducted business activity. The principal indice [sic] of reliability is that reliance on routine record keeping is essential to ongoing business activity." *In re Japanese Electronic Prods.*, 723 F.2d at 289. In other words, when the proponent of a document meets requirements one and two—regarding routine, contemporaneous record keeping—a presumption arises that the document is admissible as a trustworthy or reliable business record. The burden then shifts to the opponent of the evidence to "overcom[e] that badge of reliability by showing other reasons for untrustworthiness." *Id.* at 291.

Here, we have already concluded Calder met requirements one and two with the testimony of a "qualified witness"; thus, the burden shifted to third-party plaintiffs to "show[ ] other reasons for untrustworthiness," *id.*, under requirements three and four. Third-party plaintiffs objected to the admission of Stafford's diary because *Ostler's* testimony was being used to establish a foun-

---

**9.** Admittedly, Calder's counsel unartfully laid the foundation; however, we construe "rules governing the business record exception broadly." *Bertul*, 664 P.2d at 1183. *See also In re Japanese Electronic Prods.*, 723 F.2d 238, 289 (3d Cir. 1983) (stating "the regular practice requirement should be generously construed to favor admission").

Also, Calder's counsel initially tried to use Calder's testimony to establish a foundation for the diary's admission. The trial court did not abuse its discretion in refusing to admit the diary based on Calder's testimony. Calder was not a "qualified witness" under Rule 803(6). He was not in business with Stafford at the time of the survey and was not "a person with knowledge," Utah R.Evid. 803(6).

dation for admission. Their objection challenged the "qualified witness" criterion, not the inherent trustworthiness of the diary. Thus, third-party plaintiffs did not overcome the presumption that the diary was admissible. Accordingly, the trial court abused its discretion when it refused to admit Stafford's diary into evidence under the business records exception to the hearsay rule.

## B. Harmless error

■ However, our inquiry does not end here. The trial court's error in refusing to admit the diary was harmless. "[E]rrors which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, when substantial justice has been done, do not require reversal." *State v. Mitchell,* 234 Kan. 185, 672 P.2d 1, 9 (1983); *see also State ex rel. J.C. v. Cruz,* 808 P.2d 1131, 1136 (Utah App.1991) (holding admission of evidence harmless because error likely did not change result).

Calder's purpose in introducing the diary was "to clarify who hired whom to do what, when the survey was performed, the location of the survey, etc." [10] Because the survey's time and location are not at issue, we need not address the diary's ability to clarify those details. We must, however, determine whether the identity of the original surveyors' employer affects the result of the negligence analysis. In particular, we must determine whether third-party plaintiffs may prevail in a negligence action against Calder, even if Strawberry River hired the original surveyors.

The negligent surveyor in *Price–Orem Investment Co. v. Rollins, Brown and Gunnell, Inc.,* 713 P.2d 55 (Utah 1986), argued its obligations ran only to the general contractor, the party with whom it had contracted to survey a shopping center site. *Id.* at 59. The surveyor asserted that because the owner of the site—the general contractor's employer—was not in privity of contract with the surveyor, it had no standing to sue the surveyor for negligence. *Id.* Holding "privity of contract is not a necessary prerequisite to liability," the Utah Supreme Court applied a negligent misrepresentation analysis. *Id.* The tort of negligent misrepresentation allows a party

> injured by reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact [to] recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact.

*Id.*

We first address the reliance element. The trial court's findings regarding third-party plaintiff's reliance on "second party" Calder's negligent misrepresentation of a material fact—i.e., the survey certificate's surface discrepancies regarding the property boundaries—are unchallenged.[11] The court found third-party plaintiffs relied on the survey certificate in two ways: (1) They used the certificate when they showed the proper-

---

10. He also wanted the diary to show that Strawberry River had given the survey party the "Edmund Allen plat" as a basis for the survey. Third-party plaintiffs' contrary position was that they had given the survey party the metes and bounds description on the second real estate contract as a basis for the survey. Because the surveyors apparently did properly stake out lots 31 and 32, as depicted on the "Edmund Allen plat," Calder may have hoped to show that the survey therefore was not negligent. Calder's argument fails to account for the fact that both the proper dimensions of lots 31 and 32 and the incorrect metes and bounds description appear on the survey certificate. Apparently, the surveyors used *both* documents to prepare the certificate. Because the dimensions of lots 31 and 32 and the metes and bounds description conflict, a

discrepancy appears on the certificate Calder signed. Calder's argument that the surveyors used the "Edmund Allen plat" as the sole basis for the survey is in error.

11. Calder does challenge third-party plaintiffs' reliance on the survey certificate in the technical transfer of the property, in that the deed conveying the property from third-party plaintiffs to the Klingers mirrored the metes and bounds description found on third-party plaintiffs' deed, not the inaccurate description found on the certificate. Because third-party plaintiffs regarded the 10-foot discrepancy between the description on the certificate and the description on their own deed to be a minor error not warranting attention, *see supra* p. 1375, the trial court reasonably could

ty and its corner markers to the Klingers, the future buyers of the property, and (2) they gave the Klingers a deed with a legal metes and bounds description "confirmed by the Certificate of Survey." Thus, third-party plaintiffs meet the reliance requirement.

Second, we determine whether "second party" Calder "had a pecuniary interest in the transaction," *id.* Although the trial court made no direct findings on this aspect, Calder admitted in his trial testimony, "I agreed that for a fee I would sign the [survey certificate]." Calder's fee gave him the requisite pecuniary interest.

Third, we conclude Calder "was in a superior position to know the material facts," *id.* A licensed professional surveyor, Calder—unlike the laymen third-party plaintiffs—had the training and experience to verify the survey results.

Finally, we consider whether Calder "should have reasonably foreseen that the injured party was likely to rely upon the [survey certificate]," *id.* In *Price–Orem*, the supreme court summarily stated, "Price–Orem, as the owner of the property for whose benefit the shopping center was being constructed [by the contractor who ordered the survey], was clearly a party whose justifiable reliance upon the accuracy of the survey might be reasonably foreseen." *Id.* at 60. We likewise conclude that third-party plaintiffs as the owners of the property for whose benefit the survey was done, were "clearly a party whose justifiable reliance upon the accuracy of the survey might be reasonably foreseen," *id.*

We therefore determine that whether third-party plaintiffs or Strawberry River hired the original surveyors does not affect the validity of the trial court's negligence

analysis. Thus, the trial court's refusal to admit Stafford's diary did not prejudice Calder's substantial rights and reversal is not required.[12] *See Mitchell,* 234 Kan. 185, 672 P.2d at 9; *State ex. rel. J.C.,* 808 P.2d at 1136.

## III. Damages

Calder lumps under his argument against the award of damages the following grievances with the trial court's decision: (1) Damages should not have been awarded because Calder did not proximately cause third-party plaintiffs' damages; (2) the trial court improperly measured damages; (3) damages awarded were not foreseeable; and (4) the trial court's assessment of the property's fair market value was unsupported by the evidence.

### A. Causation

■ Calder argues that, even if he was negligent, his signing of the survey certificate did not proximately cause third-party plaintiffs' injury. Our review of surveyor negligence cases shows courts typically find proximate cause to exist when an injured plaintiff relied on the surveyor's negligent misrepresentation and the surveyor could foresee that reliance. *See Bell v. Jones,* 523 A.2d 982, 995 (D.C.Cir.1986); *Walker v. Hurd,* 195 Ga.App. 855, 394 S.E.2d 925, 927 (1990) (reliance only); *Hostetler v. W. Gray & Co.,* 523 So.2d 1359, 1368 (La.Ct.App.1988) (same); *McKinnon v. Batte,* 485 So.2d 295, 299 (Miss.1986) (same); *Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 237 (Tex.Ct. App.1985); *see also Steffensen v. Smith's Management Corp.,* 862 P.2d 1342, 1346 (Utah 1993) ("[F]oreseeability is an element of proximate cause.") We have already decided third-party plaintiffs relied on Calder's

have found they continued to rely on the certificate in drafting the Klingers' deed. *See Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 234–37 (Tex.Ct.App.1985) (holding indirect reliance is sufficient).

12. Alternatively, the trial court could have used the above analysis to support a ruling that the diary was irrelevant under Utah Rule of Evidence 402.

negligent misrepresentation and their reliance was reasonably foreseeable by Calder; thus, we need not further address this argument.[13]

## B. Measure of damages

■ Calder contends the trial court applied the wrong measure of damages. To calculate damages, the trial court subtracted the "present" value of third-party plaintiffs' forty acres ($6,000) from the price at which third-party plaintiffs sold the original property to the Klingers ($32,000), then added the closing costs on that sale ($3,383), for a total of $29,383. We affirm the trial court's award of damages as a "pecuniary loss suffered ... as a consequence of the plaintiff's reliance upon [Calder's] misrepresentation." Restatement (Second) of Torts § 552B(1)(b) (1976); see Acculog, Inc. v. Peterson, 692 P.2d 728, 731 (Utah 1984).

13. Calder cursorily advances two other arguments against finding he proximately caused third-party plaintiffs' damages. First, he contends Strawberry River, not Calder, caused the damages. After all, Strawberry River originated the inaccurate metes and bounds description when it prepared the second real estate contract. Alternatively, he argues that whoever drafted the deed conveying the property from third-party plaintiffs to the Klingers caused the damages. That draftsman duplicated in the Klingers' deed the inaccurate metes and bounds description found in third-party plaintiffs' deed.

"Proximate cause" is a cause substantially connected to the plaintiff's injury. See McCorvey v. Utah State Dep't of Transp., 868 P.2d 41, 45 (Utah 1993); Sullivan v. Scoular Grain Co., 853 P.2d 877, 887 (Utah 1993) (Stewart, J., dissenting); Hall v. Blackham, 18 Utah 2d 164, 169, 417 P.2d 664, 667 (1966); George v. LDS Hosp., 797 P.2d 1117, 1122 (Utah App.1990) (quoting Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280, 1289 (1978)), cert. denied, 836 P.2d 1383 (1991). Causation is a question of fact. House v. Armour of America, Inc., 886 P.2d 542, 551 (Utah App. 1994). We review the trial court's findings of fact under the clearly erroneous standard. Utah R.Civ.P. 52(a); Alta Indus. Ltd. v. Hurst, 846 P.2d 1282, 1286 (Utah 1993). A trial court's findings of fact are clearly erroneous only if they are not supported by the clear weight of the evidence, Doelle v. Bradley, 784 P.2d 1176, 1178 (Utah 1989), as viewed in a light most favorable to the findings, State v. Pena, 869 P.2d 932, 935–36 (Utah 1994).

We cannot say the trial court's finding that Calder proximately caused third-party plaintiffs'

## C. Foreseeability of damages

■ Because the property's value soared from the time of the survey to the time third-party plaintiffs sold the property to the Klingers, then plummeted before the Klingers rescinded the land contract, Calder argues the damages were not foreseeable. In other words, he contends he should not have to compensate third-party plaintiffs for an "artificial spike" in the region's real estate market, when they now own the same property they have always owned, excluding the Klingers' truncated tenure. This argument is without merit. A licensed surveyor—like Calder—regularly dealing with real estate should be aware of the potential over time for wide fluctuations in property values. Thus, he could reasonably be expected to foresee that a negligently performed survey can result in future damages commensurate with those fluctuations.

injury was clearly erroneous. The record supports the trial court's implicit determination that neither Strawberry River nor the drafter of the Klingers' deed proximately caused third-party plaintiffs' injury, even though they may have "actually caused" it. See Sullivan, 853 P.2d at 887 (Stewart, J., dissenting).

Many causes can combine to produce an effect, with one or more emerging as the proximate cause. See id.; George, 797 P.2d at 1122 (quoting Hamil, 481 Pa. 256, 392 A.2d at 1289); Hess v. Robinson, 109 Utah 60, 62–63, 163 P.2d 510, 511 (1945). Strawberry River's "negligence" could have been termed a "remote cause," see Hess, 163 P.2d at 511, or a "superseded cause," see McCorvey, 868 P.2d at 45. The trial court found the survey was done specifically to verify the property description originated by Strawberry River. The trial court could have found that if the survey had been done correctly, it would have alerted third-party plaintiffs to the inaccurate metes and bounds description; they would then have been able to immediately seek redress from Strawberry River. Years later, Strawberry River is defunct and that remedy is no longer available. "But for" their reliance on Calder's survey, third-party plaintiffs could have cured their initial injury at the hands of Strawberry River long ago. See Weber ex rel. Weber v. Springville City, 725 P.2d 1360, 1367 (Utah 1986).

Also, third-party plaintiffs obviously did not rely to their injury on the property description in the Klinger's deed; they relied on the description in their own deed and in the survey certificate. Thus, the drafter of the Klinger's deed did not proximately cause their injury.

### D. Trial court's assessment of fair market value

Calder maintains the trial court's determination of the property's "present" fair market value at $6,000 was unsupported by the evidence. We presume a trial court's award of damages to be correct and will overturn it only if it is clearly erroneous with no reasonable support in the evidence. *Gillmor v. Gillmor*, 745 P.2d 461, 462 (Utah App.1987), *cert. denied*, 765 P.2d 1278 (1988).

A real estate appraiser testified third-party plaintiffs had received an offer for $10,000, but "[i]t was with a thousand dollars down which would barely cover their costs so they basically would get nothing out of it, and then it was on a 10–year payoff." He further testified that "if they could get 8,000 cash ... they'd be doing very well." Finally, he stated he had recently sold a nearby fifty-two acres "that's better than theirs" for $3,000. The trial court reasonably valued the property at $6,000, well within the range of values proposed by the expert witness. Accordingly, we cannot say this finding is clearly erroneous or without support in the record.

### IV. Prejudgment Interest

Calder argues the trial court erred in awarding third-party plaintiffs prejudgment interest. The award of prejudgment interest is a question of law, which we review for correctness. *Bailey–Allen Co. v. Kurzet*, 876 P.2d 421, 427 (Utah App.1994).

The following guidelines apply to awards of prejudgment interest:

> [W]here the damage is complete and the amount of loss fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time and not from the date of the judgment. On the other hand, where damages are incomplete or cannot be calculated with mathematical accuracy ... the amount of the damage must be ascertained and assessed by the trier of the fact at the trial, and in such cases prejudgment interest is not allowed.

*Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 784 P.2d 475, 482 (Utah App. 1989) (quoting *Bjork v. April Indus., Inc.*, 560 P.2d 315, 317 (Utah 1977), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977)). In *Price–Orem*, this court denied the plaintiff prejudgment interest because "damages ascertained by determining the fair market value of real property ... 'cannot be determined with mathematical precision, [and] may be inherently uncertain.' " *Price–Orem*, 784 P.2d at 483 (quoting *Anderson v. Bauer*, 681 P.2d 1316, 1325 (Wyo.1984)).

Here, the trial court calculated the damages using the "present" fair market value of the property. The imprecise testimony of the real estate appraiser quoted above shows that the amount fixed by the trial court was calculated with mathematical inaccuracy and was inherently uncertain. Thus, the trial court erred when it awarded third-party plaintiffs prejudgment interest.

### CONCLUSION

We affirm the trial court in observing the supreme court's application of the discovery rule to this case and awarding damages. Further, we conclude that the trial court's rejection of Stafford's diary as evidence was harmless error. We also reverse the trial court's award of prejudgment interest to third-party plaintiffs. We remand this case to the trial court to revise the judgment in accordance with this opinion.

WILKINS, J., concurs.

BENCH, J., concurs in result.